# FRANCIS A. EMORY, Executor of ELIZABETH A. EMORY, *vs.* SALLIE EMORY et al.

*Construction of a Will Altered in its Scheme by a Codicil—Charge of Annuity on Land.*

A will provided that testator's wife should receive from his real estate, one thousand dollars annually during her life, "the same to be a lien upon my real estate." By subsequent clauses of the will the testator devised different farms or tracts of land to his eight children, "subject to the conditions hereinafter expressed." The condition was that "the lands of each of my children shall be respectively charged with such child's proportion of the $1,000 bequeathed as above to my dear wife, that is, each child's part of my real estate or land is to be charged with the payment annually of $125, to be paid to my wife during her life." By a codicil ratifying the will in all respects except in the devise of a farm to testator's son, William, he revoked the devise to William and gave the property therein mentioned to a trustee to pay the proceeds or income thereof to William's wife or children and to William, according to the discretion of the trustee, and after William's death to divide the property between his wife and children. *Held,*

1st. That under the will the lien of the annuity given to testator's wife first broadly charged on all the land was afterwards narrowed into a charge of one-eighth of the whole sum on the land which each child took, and land not devised to a child was not charged with the lien.

2nd. That since under the codicil no part of the income derived from the land devised in trust for William's family could be applied to the payment of the annuity, and it was not the intention of the testator that the land itself should be sold therefor, the gift made by the codicil was not subject to any condition respecting the annuity or to a lien therefor.

3rd. That the effect of the codicil was to reduce the annuity to testator's widow by one-eighth by eliminating from the lien therefor the land originally given to William, and the annuitant has no claim for any part of her annuity against the land devised in trust or the income thereof.

Appeal from a decree of the Circuit Court for Queen Anne's County (Pearce, C. J.)

The cause was argued before McSherry, C. J., Boyd, Schmucker and Jones, JJ.

*Edwin H. Brown,* for the appellant.

*Richard D. Hynson,* for the appellee.

· McSHERRY, C. J., delivered the opinion of the Court.

This is, to say the least of it, a perplexing case. Any conclusion which may be reached will not be beyond criticism, and most assuredly will not be free from doubt. The record presents a question of interpretation—the interpretation of a will. Such a question is rarely solved by precedent, and, with few exceptions, the principles which must be invoked in dealing with it are essentially of a most general character. After all has been said that can be said about canons of interpretation, it comes down in the end, when no settled rule of property is applicable, to an inquiry as to what was the testator's intention. That intention is not, of course, to be made out or arrived at by mere surmise, but must be found in the words of the will as they are read in the light of the circumstances which surrounded the person who used them at the time he executed the instrument. There can be no doubt at all that if there had been no codicil to the will there would have been no such controversy as has arisen; because the codicil and the codicil alone has occasioned it. And this brings us to a statement of the precise question which is presented.

On the sixth of March, eighteen hundred and fifty-eight, William Emory executed his last will and testament. It contains seventeen items. By the first, after some bequests to his wife, he provided as follows: " I also direct that she [his wife] shall receive from my real estate one thousand dollars annually during her life, the same to be a lien upon my real estate, with a right of distress for the same unless it is promptly paid to her as hereinafter directed." Then after making some other bequests and devises to her he declared that the above bequests and devises, which of course included the annuity, were to be received by his wife " instead and in lieu of her dower in any personal or real estate." By the

third clause he gave certain land to his son, Stewart R. Emory, " subject to the conditions hereinafter expressed." By the fourth clause he gave to his daughter, Margaret R. Perkins, certain other land.   This clause was construed in *Perkins* v. *Emory*, 55 Md. 27; but that case throws no light on the pending controversy.   By the fifth clause he gave to his son, William Emory, a farm, " subject to the provisions hereinafter expressed."  By the sixth item he gave to another son a farm " subject to the conditions hereinafter inserted." By the seventh item he gave to his son, John Emory, a farm " subject to the conditions hereinafter expressed or inserted." By the ninth clause he gave to his son Thomas a farm " subject to the conditions hereinafter expressed or inserted."  By the tenth item he gave to his son, Francis A., a farm, " subject to the conditions hereinafter expressed or inserted, to him and his heirs."   And by the eleventh item he gave to his son Addison a farm, " subject to the conditions hereinafter expressed or inserted."   By the sixteenth item of the will he declared :   " It is my will, and I hereby direct, that the *lands of each of my children* shall be respectively charged with *such child's proportion* of the one thousand dollars bequeathed as above to my dear wife, that is, *each child's part* of my real estate or land is to be charged with the payment annually of one hundred and twenty-five dollars, to be paid to my wife during her life."  This is doubtless the provision or " condition" to which the previous gifts of land to his several children were declared to be subject.  Thus far there is no difficulty ; but on June the fourth, eighteen hundred and fifty-eight, the testator made a codicil by which, after first declaring that he ratified and confirmed " every clause, bequest and devise" contained in the will, except the devise to his son William, he provided as follows :   " It is my will and I do hereby *revoke* all and singular the devises and bequests to my son, William Emory, contained in my said will, and I do hereby give, devise and bequeath the property of every kind and description, which in my said will has been given to my said son, William Emory, to my son, Stewart

R. Emory, * * * *in trust* for the following purposes (to wit) to distribute to and amongst the wife and children of my said son, William Emory, so much of the annual pro-ceeds of said property, as my said trustee shall in his sole discretion deem proper ;. and to pay my said son, William Emory, the residue of said annual proceeds or profits, or so much thereof, as the said trustee may think proper, and if any residue remains unexpended by said trustee then to invest the same in some productive bank stock or other pub-lic stock, or on mortgage in the name of the trustee to be thereafter considered as capital * * * * and upon the death of my son, William Emory, the property hereby devised and bequeathed to my trustee shall be divided equally to and amongst the children of my said son, William Emory, * * * and the wife of my said son, William Emory, living at his death, shall receive such share of said property, as she would have been entitled to in case he, my said son, William Emory, had died seized and possessed of the same * * * ."

If there had been no codicil it is perfectly apparent that all of the eight children, who received devises of land, would have been placed upon a plane of perfect equality. Each would have been required to pay one-eighth of the annuity, and the land of each would, under the sixteenth clause, have been chargeable with that one-eighth and no more, because though in the *first* clause the payment is charged upon the *whole* of the real estate owned by the testator, the sixteenth clause distinctly modifies this disposition and dis-tributes and apportions the gross sum amongst those chil-dren who took land under the will. " Each child's part of my real estate or land is to be charged with the payment annually of one hundred and twenty-five dollars." This is the express provision of the sixteenth clause ; and " each child's part " undoubtedly means each part given by the testator to a child. But for the codicil each of the eight devisees would have been free to apply the income derived from the devised lands to the payment of the annuity.

But the codicil changed this.   In terms it revoked the gift to William.   He, therefore, took no land under the will. He ceased to be one of the eight amongst whom the payment of the annuity was distributed.   He consequently ceased to be one of those who were required to pay the sum charged on the testator's land.   If the sixteenth clause modified the general lien created by the first clause, as it undoubtedly does, by specifically declaring that the one thousand dollars was to be payable in eighths, and that one of those eighths should be borne by each of eight children who took land under the will, then the lien broadly charged on *all* the land by the first clause was narrowed by the sixteenth into a charge of one-eighth of the whole sum upon the land which each child took.   Land, therefore, not devised to a child was, by operation of the sixteenth clause, land not charged with the lien.   In a word, the effect of the sixteenth clause was to limit the lien to land devised to a child.   Now, the codicil not only revoked the devise to William, but gave the land which had been given to William by the fifth clause, to another son, not as beneficial owner, but in trust for the wife and children of William.   Under the terms of the trust, created by the codicil, no one answering the description of a child of the testator takes any interest in the land or in the income arising from the land, except, as respects the income, at the discretion of the trustee.   The income is particularly appropriated to designated uses.   By so appropriating it the testator, in his own way, and in furtherance of his own intentions, effectually declared that no part of it should be applied to the payment of the annuity.   By the definite expression of his intention that the income should be expended for the support of William's wife and children, and that the surplus, if any, should be added to the *corpus* of the trust estate, the testator as completely declared that no part of that income should be appropriated to the payment of the annuity as if he had so stated in explicit words.   Without committing a breach of trust the trustee could not divert a cent of the

income from the declared purposes of the trust, and, therefore, he could not lawfully have used any of it in paying the annuity. We have, then, in the body of the will a lien clearly charged on the land itself in the hands of each of eight children, and not a charge upon income at all; and in the codicil a revocation of the gift made to one of the children and no intimation of a continuation of the charge upon the land devised away from that child by the codicil. By exclusion there is the equivalent of an emphatic declaration that the annuity shall not be charged upon the income derived from that land. But we have more than all this. In the will the devise to William was subject to the " conditions " subsequently inserted; that is, the gift was made subject to the lien as to one-eighth of the annuity. When the gift was revoked, the whole clause, including the " condition," went with it; and in the codicil that " condition " was not incorporated. So the gift made by the codicil was not made upon or subject to any " condition " at all.

Now, if by force of the first clause of the will alone, without reference to the sixteenth clause, the land devised by the codicil is subject to the lien a most unequal result is the consequence. Since there are no restrictions on any of the devises to the other seven children, each of them was at liberty to discharge the lien on his land out of the income arising therefrom and thus preserve the land itself and prevent it from being sold to pay the annuity. But in the instance of William no part of the income can be applied to the payment of the annuity because the whole of it is by the terms of the trust expressly applied to other and distinctly different purposes; and therefore the *corpus* of the trust estate, if the lien continued, was made liable to be invaded each year until wholly consumed in paying the lien of the annuity. It must consequently be assumed that the testator whilst studiously providing for the disbursement of the income deliberately intended to destroy the possibility of there being any income by providing that the capital which was to produce the income should be absorbed in

paying the annuity.    Instead of protecting the gift intended for the benefit of William's family, he systematically invented a scheme for its destruction.    That is not all.  If the lien continued the *corpus* of the trust was certain to be invaded and to be ultimately absorbed, and the testator must have intended that the limitation of the estate over after the death of William to William's wife and children should eventuate in their getting nothing.    Obviously he had no such purpose in view as either of those just suggested, and yet the one or the other is precisely that which he must have had in mind if the fraction of the distributed annuity charged by the will upon this particular land was not revoked and designed to be revoked by the codicil.    And so it comes to this, that either there was a partial revocation of the annuity—a reduction of it from one thousand dollars to eight hundred and seventy-five dollars by eliminating from the lien the land originally given to William; or else the devise made in the codicil was designed to be of no benefit to William's family at all, because destructible by the payment of the annuity out of the *corpus* of the thing given.

If the testator intended the annuity of one thousand dollars to stand unabated and yet made a codicil which by its effect, notwithstanding its reaffirmation of the will, reduced the annuity to eight hundred and seventy-five dollars, then there were conflicting and inconsistent intentions in his mind, which cannot both be gratified because they cannot be reconciled.    One or the other must give way.    Which of the two must be disregarded is a question that can be solved only by considering the whole scheme of the testamentary paper and weighing the consequences which must follow the adoption of either.    Whilst it may be, and doubtless is, metaphysically true that the moral character of an act cannot be determined by its final consequences, for the double reason that a bad act may produce good results, just as a good act may produce bad results, and because, as the ultimate consequences of any act may never be known,

they obviously cannot be made the *criteria* by which to judge the act; yet, outside of the domain of moral questions, when the immediate results which flow from a particular construction placed upon words employed to express an intention, are such as indicate that the imputed intention could not have existed, because if it had existed as imputed, it would have been simply a contradiction of itself; it must of necessity follow that the particular construction is erroneous. As, then, the gift made by the codicil, if subject to the lien created by the will, is in effect no gift at all for the benefit of William's family, because the thing ostensibly given was destroyed as a gift by the very terms under which it was given and became thenceforth a mere appropriation to the actual payment of the annuity; it is clear that the will and codicil cannot be so interpreted together as to lead to such a consequence. The only other interpretation that is left is that which will permit the codicil to be effective; and it is the one whereby the annuity must be treated as having been reduced to eight hundred and seventy-five dollars by reason of the land, which was originally devised to William, having been taken out of the scope of the lien by being given over under the codicil to persons who do not answer the description of those who under the sixteenth clause were required to pay the annuity.

The bill of complaint in this case was filed March the first, eighteen hundred and ninety-eight, in the name of Elizabeth A. Emory, widow of the testator, against the widow and children of William Emory. Shortly afterwards Elizabeth A. Emory died and her executor was made plaintiff. The testator died in August, eighteen hundred and sixty. The amount of the annuity claimed to be due to the plaintiff and alleged to be a lien on the land devised by the codicil was, on January the first, eighteen hundred and ninety-eight, the sum of four thousand six hundred and sixteen dollars and eighty-seven cents. The Circuit Court for Queen Anne's County dismissed the bill and denied the relief sought. It based its decree on the ground

that the annuity was a charge upon the income and as there was no income in the hands of the defendants, the bill was dismissed. The result reached by the Circuit Court was right, but it will be seen from what we have said that we do not agree with the reasons assigned for the dismissal of the bill. As, according to our view, the codicil cut out from the lien created by the will the land devised in trust by the codicil, the annuitant had not, and her executor has not now any claim against that land, and the decree dismissing the bill will, for that reason, be affirmed.

*Decree affirmed with costs above and below.*

(Decided June 15th, 1900.)