# THE ASSOCIATED PROFESSORS OF LOYOLA COLLEGE

*vs.*

## HAMMOND J. DUGAN ET AL., EXECUTORS AND TRUSTEES.

*Ademption of Legacy—Construction of Codicil—Time of Paying Legacy.*

In the case of a legacy for a particular purpose to one towards whom the testator does not stand *in loco parentis,* a subsequent gift by the testator in his lifetime to the legatee for the same purpose operates as a satisfaction of the legacy to the amount of the gift, subject to the qualification that the gift must not be substantially different in kind from the legacy.          p. 550

The application of the rule is not affected by the fact that the legacy is of money and the gift is of negotiable bonds. p. 551

A will and its codicils must be interpreted as one instrument, and the provisions of the will are to be given effect except to the extent only to which they are revoked by the codicils, either in terms or by a clear inconsistency between the earlier and later expressions of the testator's intention.          p. 552

The will expressly providing that a bequest to a college be paid out of a portion of the estate to be ascertained after the death of testator's widow, *held* that the fact that codicils to the will changed the object and amount of such bequest did not make it payable before the widow's death.          p. 552

It is the testator's intention as expressed in his will and codicils, and not the desire manifested by his conduct during his life, that must determine the time of paying a bequest.     p. 553

*Decided January 12th, 1921.*

Appeal from the Circuit Court of Baltimore City (GOR-TER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*William L. Marbury* and *Frank Gosnell,* with whom was *George Weems Williams* on the brief, for the appellant.

*N. Charles Burke* and *Harry N. Baetjer,* with whom were *Edward H. Burke, Ferdinand Dugan* and *Joseph France* on the brief, for the appellee.

URNER, J., delivered the opinion of the court.

The will of Thomas O'Neill, of the City of Baltimore, after making certain pecuniary bequests to his employees, devised and bequeathed his residuary estate to trustees, who were directed to hold and manage the estate and to pay out of the income the annual sums of $25,000 to the testator's widow, Roberta O'Neill, $5,000 to each of three sisters, $1,000 to another sister and $500 to a brother, during their respective lives, and to hold and invest, during the lifetime of the widow, all of the balance of the income, which should become and be treated as a part of the corpus of the trust estate. Authority was conferred upon Mrs. O'Neill to dispose of $250,000 of the estate by her will. The testator then proceeded to provide that after the death of his wife the trustees should set apart out of the corpus of the estate a sufficient portion to yield the annual sums bequeathed to his sisters and brother, and the balance of the corpus was disposed of as follows:

> "One-third thereof to the Sisters of the Bon Secours for the care of the sick of the City of Baltimore, a body corporate, for the building and maintenance of a hospital in the City of Baltimore, in which hospital no charge of any kind or description shall be required of any patient * * * ."
>
> "And I hereby give to the Associated Professors of Loyola College in the City of Baltimore, a body cor-

porate duly incorporated, the sum of five hundred
thousand dollars, to be used by said body corporate in
the purchase of a piece of ground near the City of Bal-
timore, and the erecting and maintaining a boys' coun-
try school."

"All the balance of my estate (including after the
death of my said sisters and brother, the sum so as
aforesaid put aside by my trustees to pay the annui-
ties above mentioned) unto Most Reverend James Gib-
bons, Roman Catholic Archbishop of Baltimore for
the time being, and his successors in the Archiepiscopal
See of Baltimore, according to the discipline and gov-
ernment of the Roman Catholic Church, a corporation
sole, as a nucleus for and for the erecting of a cathedral
church in the City of Baltimore."

It was on July 10, 1912, that Mr. O'Neill executed the will
from which we have quoted. A year later he executed the
first codicil to his will, revoking the bequest of one-third of
the remaining corpus to the Sisters of the Bon Secours for
hospital purposes, and bequeathing that portion of the estate
to a corporation, to be formed under the laws of Maryland,
by incorporators named in the codicil, for the erection and
maintenance of a hospital which should be under the man-
agement of the Sisters of the Bon Secours or the Sisters of
Charity, as the Board of Trustees of the corporation might
determine.

A second codicil was executed on July 10, 1915. It is in
part as follows:

"I hereby revoke that portion of the fifth item of
said will which gives the sum of five hundred thousand
dollars ($500,000) to the Associated Professors of Lo-
yola College in the City of Baltimore, a body corpor-
ate, to be used by said body corporate in the purchase
of a piece of ground near the City of Baltimore and
the erecting and maintaining of a boys' country school,
and as the said body corporate now has a lot of ground
in Guilford, I do hereby give the sum of five hun-

dred thousand dollars ($500,000) to the said Associated
Professors of Loyola College in the City of Baltimore,
to be used in the erecting of a church, including the
main and the two side altars."

By a third codicil, dated January 19, 1918, the amount of
the bequest to Loyola College was reduced. The provision to
that effect is in the following words:

"Having recently given to the Associated Professors
of Loyola College in the City of Baltimore, a body cor-
porate, the sum of about two hundred thousand dol-
lars ($200,000) for the purpose of erecting a church,
I do hereby reduce the amount given by the first item
of the second codicil to my said will from five hundred
thousand dollars ($500,000) to the sum of three hun-
dred thousand dollars ($300,000), and do hereby direct
that the said last named amount be paid to the said
Associated Professors of Loyola College in the City
of Baltimore, to be used for the purpose of erecting a
church, including the main and two side altars, upon
the lot of ground in Guilford now owned by said body
corporate."

Mr. O'Neill died on April 6, 1919. The value of the es-
tate passing under the residuary clauses of his will is about
$5,000,000.

The present proceeding is a special case stated for the pur-
pose of securing a judicial determination of certain questions
raised with respect to the bequest to Loyola College. The
plaintiff in the case is the college, and the defendants are
Hammond J. Dugan and Safe Deposit and Trust Company,
Executors and Trustees under the will and codicils, the Good
Samaritan Hospital, Incorporated, the corporation formed
under the provisions of the first codicil, and Most Reverend
James Gibbons, Roman Catholic Archbishop of Baltimore.
There are two questions to be decided: First, whether the
bequest of $300,000 to Loyola College was partially adeemed
by a subsequent gift of securities worth $81,722.50 made by

the testator to the college in his lifetime, and, second, whether the bequest, whatever its true amount, is payable at the present time or not until the death of the testator's widow.

In the years 1914 and 1915 Mr. O'Neill purchased certain lots of ground in Guilford, in the suburbs of Baltimore, at a cost of $88,000 and caused them to be conveyed to Loyola College by deeds which contained provisions under which some of the lots could be used only as a site for a church and for the residential apartments of the priests of the church and the professors of the college, and the other lots could be used only for college and school purposes. Between January 14, 1914, and July 1, 1917, Mr. O'Neill had correspondence with a firm of architects, and entered into a contract with them, relating to the plans and specifications for the erection of a church edifice upon the lots he had bought for the college in Guilford. The construction of the church was not begun because building costs and conditions were abnormal, and Mr. O'Neill regarded the amount of his income as being too uncertain. The architect's fee of $5,000 for services rendered was paid by the college out of its funds. On December 6, 1917, Mr. O'Neill gave the college negotiable bonds of the par value of $194,000. It is to this gift that the codicil of January 19, 1918, refers as amounting to about $200,000, and on account of which he reduced to $300,000 the bequest of $500,000 which he had made to the college in the will. In the following December Mr. O'Neill gave the college additional securities having a market value of $81,722.50, and this is the gift to which the first of the questions for decision relates. One of the receipts given by the president of the college for the bonds previously delivered by Mr. O'Neill states that they were given for the erection of a church on the ground at Guilford which he had donated. The third codicil also shows that the bonds then delivered were given for that purpose. It was testified by Mr. O'Neill's secretary, who prepared the receipt for the last gift of bonds to the college, that Mr. O'Neill referred to those securities as being given

like those delivered a year earlier. The testimony of the treas-
urer of the college shows that the gifts were intended and set
apart to create a church building fund. That this was the
purpose for which all of the donated bonds were designed to
be used is the only conclusion which is consistent with the
proven facts.

This conclusion is not affected by the omission of Mr.
O'Neill to make a fourth codicil to his will expressing his
intention that his later gift of securities should, like the
earlier one, reduce the amount bequeathed to the college by
the will for the same object. It may have been his expecta-
tion to execute another codicil to that end. If such was his
purpose, it was defeated by his sudden death during the year
following the last donation. The fact, also relied upon, that
the estimated cost of the building was reported to Mr. O'Neill
as being higher than the amount originally provided by his
will, does not interfere with the adoption of the view we have
expressed. When he learned that the cost would be consid-
erably in excess of the $500,000 which he intended for the
church building, there was an immediate suspension of his
plans for its construction. The high cost reported was un-
derstood to be due to the war conditions then existing, and
the evident plan was to postpone the erection of the church
until normal conditions should be restored.

In the case of a legacy to one towards whom the testator
does not stand *in loco parentis,* the rule is that if the bequest
is for a particular purpose, a subsequent gift to the legatee
by the testator in his lifetime for the same purpose operates
as a satisfaction of the legacy to the amount of the gift. This
statement of the rule is subject to the qualification that the
gift *inter vivos* must not be substantially different in kind
from the legacy. There was practical agreement in the argu-
ment as to the law affecting the question now being consid-
ered. The rule we have stated is uniformly recognized and
applied where the conditions make it appropriate. *Pomeroy's
Eq. Jur.* (4th Ed.), Sec. 562; *Roper on Legacies* (2nd Ed.),

vol. 1, p. 380; 3 *Story's Eq. Jur.* (14th Ed.), Sec. 1495; 40 *C. Y. C.*, 1915, 1916; *In re Corbett* (1903), 2 Ch. 326; *In re Pollock*, 28 Ch. D. 552; *In re Aynsley* (1914), 2 Ch. 422; *Pankhurst* v. *Howell*, L. R. 6 Ch. App. 136; *In re Fletcher*, 38 Ch. Div. 373; *Hine* v. *Hine*, 39 Barb. (N. Y.), 507; *Taylor* v. *Tolen*, 38 N. J. Eq. 91.

The legal principle involved being clear and undisputed, the only question is whether it applies to the facts of the present case. It was contended on behalf of the college that the evidence does not show definitely that the last gift of bonds was for the same specific purpose for which the bequest in the will was intended. As already indicated, our conclusion is that the purposes of the gift and the legacy were identical. It was argued also that the rule of partial ademption does not apply because the legacy differs in kind from the gift, one being of money and the other of negotiable bonds. In our opinion this is not such a material difference as to prevent the operation of the general rule. Both were gifts of personality and both were dedicated to the same purpose of providing a fund for the erection of the church. In *Dugan* v. *Hollins*, 4 Md. Ch. 139, a gift of real estate by a testator was held not to work an ademption of a pecuniary legacy to the donee. The theory of that decision is not applicable to the very different conditions here presented. Our conclusion is that the bequest of $300,000 to the college has been satisfied to the extent of the later gift of bonds of the value of $81,722.50, and that the amount of the legacy has been thus reduced to $218,277.50.

The second question to be determined relates to the time when the legacy is payable. On behalf of Loyola College the view is urged that, according to a proper construction of the will and codicils, and having regard to all the circumstances, the legacy is payable at the present time.

The bequest to the college is directed to be paid out of a portion of the estate which, as the will expressly provides, is to be ascertained after the death of the testator's wife, who

is still living. The purpose of the will that the legacy should not be paid during the widow's lifetime is, therefore, unmistakable. But the argument is that the codicils reveal a different intention, especially when considered in the light of the extrinsic proof.

In so far as the codicils relate to the bequest to the college, the only changes they purport to make are, first, as to the object to which the bequest is to be applied, and, secondly, as to its amount. Except for the modifications thus effected, the will is expressly confirmed. It is a settled rule of construction that a will and its codicils must be interpreted as one instrument, and the provisions of the will are to be given effect except to the extent only to which they are revoked by the codicils, whether in terms or by a clear inconsistency between the earlier and later expressions of the testator's intention. *Lewis* v. *Payne*, 113 Md. 127; *Buchanan* v. *Lloyd*, 88 Md. 642; *Hutchins* v. *Pearce*, 80 Md. 434; *Halsey* v. *Convention*, 75 Md. 275; *Thomas* v. *Levering*, 73 Md. 451; *Johns Hopkins Hospital* v. *Pinckney*, 55 Md. 365.

The codicils under consideration, in changing the object and amount of the bequest to the college, make no reference to the time of its payment. But the will speaks clearly and definitely on that subject. It directs that after the death of the tstator's wife the legacy shall be paid out of a portion of the estate which is then for the first time to be segregated. In order to make the bequest payable at an earlier period, it would be necessary to change radically the consistent testamentary plan upon which the will was constructed. It is provided by the will that the whole residuary estate shall be held in trust during the life of the testator's widow, and the right of disposition by will is given her as to $250,000 of the estate, and it is directed that, upon her death, one-third of the estate, remaining after a sufficient portion has been set apart to yield specified annuities for his sisters and brother, shall be paid to the Sisters of the Bon Secours for the founding and maintenance of a hospital, and out of the

other two-thirds the legacy of $500,000 to Loyola College, and the balance is bequeathed to Cardinal Gibbons for use in the erection of a cathedral church in the City of Baltimore. If the legacy to the college were to be taken out of the estate before the period designated by the will, a very considerable difference would be made in the amounts of the proportions to be received by the Cardinal and by the corporation substituted by the first codicil for the Sisters of the Bon Secours. There is nothing in the terms of the codicils to justify a construction which would cause such a material variation from the testator's plainly indicated plan of distribution.

The case of *Emory* v. *Emory,* 91 Md. 531, cited in support of the opposite view, was concerned with a will and codicil which differ substantially in their terms from those we are now construing. In that case an annuity of $1,000 to the testator's wife was charged by the will, in equal shares of $125 each, upon tracts of land devised separately to his eight children. By a codicil the devise to one of the children was revoked and the same land devised in trust for purposes and under directions which precluded the existence of a charge on that property of any part of the annuity for which the will made provision. The codicil was, therefore, held to have the effect of relieving that particular land from the payment of the proportion of the annuity with which it had been originally charged. Clearly that case has no force as a precedent in the one now being decided.

It was earnestly argued that the action taken by Mr. O'Neill in his lifetime with a view to the erection of the church, to the cost of which the legacy to Loyola College was intended to be applied, is inconsistent with the theory that the legacy is not payable until after his widow's death. But it is the intention of the testator as expressed in his will and codicils, and not the desire, manifested by his conduct, to have the church built during his life, that must determine the question now being considered. While it was apparently

his hope and design to have the church erected before his death, we are not authorized on that account to construe the formal declarations of his testamentary purpose contrary to their obvious meaning.

The conclusions we have stated are in agreement with those reached by the Court below, and its decree will be affirmed. It is proper, under the circumstances, that the estate should bear the costs of the proceeding.

> *Decree affirmed, the costs to be paid out of the estate.*