Dissenting Opinion by
McDonald, J.,
which Barbera, C.J., and Greene, J., join
The Majority opinion appears to be based on the premise that the pre-eminent value for any testator is the avoidance of taxes. Perhaps there are people like that. If so, one would expect them to have bought a Yugo years ago and scrupulously maintained it to minimize and thereafter avoid the automobile excise tax.
In fact, while paying no more taxes than necessary is significant, most people have other values that also inform important decisions for their lives — and for their heirs. In the purchase of a car, for example, interests in function, reliability, comfort, and safety may dissuade a person from purchasing the cheapest — and least taxed — car, although that may mean paying more in tax. So also is the case in devising an estate plan. As this Court has observed, “[mjinimizing estate and *609 inheritance taxes for beneficiaries ... may not always be the ultimate driving force behind the testator’s decisions regarding the provisions contained in his or her will.” Noble v. Bruce, 349 Md. 730, 757, 709 A.2d 1264 (1998).
There appears to be no dispute that the estate plan implemented by Mr. Clancy’s 2007 will (1) provided for the payment of certain expenses and made specific bequests of real and personal property to his wife from his second marriage (“Mrs. Clancy”), (2) set aside a portion of his estate for Mrs. Clancy free of estate taxes (“the Marital Share”), (3) then provided for the payment of taxes, and (4) finally divided the rest of his estate evenly between a trust benefitting Mrs. Clancy (and ultimately their minor child) (“the Family Trust”) and trusts benefitting the children from his first marriage (“the Older Children’s Trusts”).
What is in dispute is the effect on that estate plan of an amendment of that will, known as the Second Codicil. In the view of Mr. Clancy’s Personal Representative,[1] that amendment had the effect of achieving a significant reduction in tax liability (from $26 million to $15.7 million) while retaining the equal distribution (50% - 50%) of the residual of the estate.
The reading of the will urged by Mrs. Clancy would achieve a smaller additional tax reduction (from $15.7 million to $11.8 million), but would cast aside the plan for equal distributions from the residual despite the fact that the language of the will directing equal distributions was not amended — and skew the distributions from the residual in her favor (63% - 37%).
The Majority opinion opts for Mrs. Clancy’s interpretation of the will — an interpretation in which an amended savings clause is construed to contradict basic terms of the original will that remained unchanged. However, we ordinarily read provisions of wills to be consistent unless there is no way to do so. In my view, the savings clause can be read consistently *610 with the original will to achieve the tax savings for which codicil was intended without discarding the basic estate plan. Accordingly, I would adopt the reading of the will offered by Mr. Clancy’s Personal Representative.
Background
The following supplement to the Majority opinion’s background information will aid in understanding this dissent.

Gross Estate, Marital Deduction, and Taxable Estate

A gross estate refers to the total dollar value of all property and assets in which an individual had an interest at the time of the individual’s death. Federal estate taxes are assessed on the basis of the taxable estate, which is the gross estate minus any allowable deductions.[2] The primary deduction relevant here is the marital deduction. The value of the marital deduction generally is the full value of all property in the gross estate that passes from the decedent to a surviving spouse, provided that the interest passing to the spouse does not terminate or fail. 26 U.S.C. § 2056. A property interest that does terminate, and ordinarily would not qualify for the marital deduction, may still qualify for the marital deduction if it is “qualified terminable interest property” (“QTIP”).[3] 26 U.S.C. § 2056(b)(7).

QTIP and Savings Clauses

To qualify a trust as a QTIP trust, the property must pass from the testator to that trust, the surviving spouse must have a qualifying income interest for life, and the necessary election must be made by the personal representative. 26 U.S.C. § 2056(b)(7)(B)(i). A surviving spouse has a qualifying income interest for life if:
*611 (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct[4] interest for life in the property, and
(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
26 U.S.C. § 2056(7)(B)(ii). In order to treat property as QTIP, the personal representative must make an irrevocable QTIP election on the appropriate tax return. 26 U.S.C. § 2056(7)(B)(v).
Because wills often include provisions that may conflict with the QTIP requirements but that provide guidance for other trusts not intended to qualify as QTIP, a testator will often include a savings clause in order to ensure that a trust intended to qualify as QTIP in fact does so. Cf. Edward C. Renenger, Can a State’s Marital Deduction Savings Clause Reform a Defective Marital Deduction? Estate of Davis v. Commissioner, 57 Tax Law 615, 619 (2004) (“The requirements to meet the section 2056(b)(5) exception to the non-deductibility of terminable interests are rigorous ... [W]here the rules are often extremely technical and the stakes may be high, it is not surprising that advisers seek to minimize risks of disqualification. Using a marital deduction savings clause is one way to minimize such risks.”).

Apportionment of Obligation to Pay Taxes

While the amount of federal estate tax is determined by federal law, the allocation of responsibility for paying that tax is determined by state law. Riggs v. Del Drago, 317 U.S. 95, 97-98, 63 S.Ct. 109, 87 L.Ed. 106 (1942).
In Maryland, the tax liability of an estate is generally apportioned among the interested parties under the apportionment statute. Maryland Code, Tax-General Article (“TG”), § 7-308. By default, that apportionment is made “in the proportion that the value of the interest of each person *612 interested in the estate bears to the total value of the interests of all the persons interested in the [taxable] estate.” TG § 7-308(b)(1). Stated differently, if a person has a 45% interest in the taxable estate, then that person must pay 45% of the estate tax due. Therefore, under the apportionment statute, a surviving spouse who receives property that qualifies for the marital deduction would not pay estate taxes based on the property covered by the marital deduction because that share is not part of the taxable estate. See TG § 7 — 308(e)(1) (in apportioning liability for federal estate tax, allowance is to be made for any exemptions or deductions). Similarly, under the apportionment statute, responsibility for paying those taxes would not be allocated to a QTIP trust.

Opting Out of AppoHiomnent

A testator, however, may customize how the estate taxes are paid, as is evident by the fact that the testator may, in the will, opt out of the general apportionment scheme.[5] TG § 7-308(k); Pfeufer v. Cyphers, 397 Md. 643, 655, 919 A.2d 641 (2007) (“the intent of the testator, as ascertained from the language of the will, controls the source of the funds to be used to pay inheritance taxes so long as there is no conflict with the applicable statute, other law or public policy.”); see also Johnson v. Hall, 283 Md. 644, 649, 392 A.2d 1103 (1978) (explaining that the will must clearly indicate the testator’s intent to opt out of the apportionment statute). A testator may specify the portion of the estate’s assets from which estate taxes are to be paid even when that customization may result in taxes being paid from a portion of the estate that would otherwise qualify for a deduction in the computation of the tax. See Pfeufer, 397 Md. at 660, 919 A.2d 641; accord Second Nat’l Bank of New Haven v. United States, 351 F.2d 489, 494 (2nd Cir.1965) *613 (“The codicil shows a desire to qualify one-third of the residue as a marital deduction. It does not disclose an intention to have this part of the residue in effect tax free and grossly disproportionate to the other two-thirds. That which the testator did not choose to do during his lifetime the courts should not do after his death.”).
By opting out of apportionment, a testator may qualify a larger portion of the estate for the marital deduction — with the resulting benefit in the computation of the tax — but still allocate payment of estate tax to a portion of the estate intended to benefit the surviving spouse and thereby pass a larger proportion of the estate to all of the estate’s beneficiaries, as well as the surviving spouse.
Discussion

The Text of the Will and Codicil

Construction of a will, like interpretation of any other legal text, begins with the plain meaning of the words of the document. Pfeufer, 397 Md. at 649, 919 A.2d 641. When interpreting a will, a court must ascertain and effectuate the testator’s expressed intent, as gathered from an examination of the will and codicils as a whole, as if they were one complete document. Id.; McIntyre v. Byrne, 217 Md. 71, 77, 141 A.2d 692 (1958) (“[t]he primary object in construing a will is to ascertain the intention of the testator from the whole instrument”); Associated Professors of Loyola College of City of Baltimore v. Dugan, 137 Md. 545, 113 A. 81 (1921). In general, we interpret a will so as to harmonize its provisions and avoid conflicts, such that the interpretation gives effect to each provision wherever possible. McIntyre, 217 Md. at 77, 141 A.2d 692.
Resolution of this case thus begins with the text of the will and codicils. As the Majority opinion sets forth, the will provides that a portion of the estate is “set apart” (the “Marital Share”) before the payment of taxes to fund a Marital Trust. Majority op. at 589-93, 144 A.3d at 810-12 (Item Third, Item Sixth (A)). The will then provides that, after *614 the Marital Share is set apart, estate and related taxes are to be paid out of the residuary estate, subject to limitations not relevant here. Id. (Item Third). There appears to be no dispute among the parties that, in directing how estate taxes are to be paid, Mr. Clancy opted out of the apportionment statute.[6] The will then provides that “one-half of the remainder of my residuary estate shall be paid over and distributed to my trustee as [the Family Trust]” and “the other one-half of the remainder of my residuary estate shall be” paid over and distributed to the trustee as the Older Children’s Trusts. Id. (Item Sixth (B), (C)). Unlike the provision concerning the part of the estate (the Marital Share) used to fund the Marital Trust, the parts of the estate used to fund the Family Trust and the Older Children’s Trusts are not to be “set apart” before the payment of taxes.
The will also contained a Savings Clause to ensure that the Marital Share would qualify for the marital deduction when estate taxes are computed. It explicitly limited the Personal Representative’s or trustees’ authority to do anything that would prevent the estate “from receiving the benefit of the marital deduction as hereinbefore set forth.” Id. (Item Twel-veth (D)).[7]
The Second Codicil[8] amended the will in several respects to allow the Family Trust to qualify for the marital deduction when estate taxes are computed. For example, that codicil eliminated a provision of the will that terminated Mrs. Clan *615 cy’s interest if she remarried and also eliminated a provision of the will that allowed the trustee discretion to use the funds in the Family Trust for the benefit of the minor child during Mrs. Clancy’s lifetime. See Majority op. at 593-95, 144 A.3d at 593-95 (amendments of Item Eighth). Consistent with those amendments, the Second Codicil also amended the Savings Clause to ensure that the Family Trust, like the Marital Share, would qualify for the deduction when taxes are computed.[9] However, with respect to the payment of taxes, the Second Codicil did not amend Item Third to provide that the Family Trust was to be set apart before the payment of taxes. Thus, the plain meaning of the text of the will, as amended by the Second Codicil, requires that the Marital Share and the funds intended for the Family Trust both qualify for the marital deduction when taxes are computed; however, the Marital Share is “set apart” from the funds used to pay those taxes while the one-half of the residuary estate used to fund the Family Trust is not.

Reconciling the Will and Second Codicil

In short, the will provides that the Family Trust and the Older Children’s Trusts receive equal shares of the residual of the estate after payment of taxes. The Second Codicil provides that the estate should receive the benefit of the marital deduction with respect to both the Marital Share and the Family Trust in the computation of estate tax liability. If these two provisions can be reconciled, then ordinary principles of will construction require that we read them to be consistent.
*616 As an initial matter, we ought to expect that these two provisions can be reconciled. While the operative language in the amended Savings Clause comes from the Second Codicil, the original will contained nearly identical language. Here, there is no evidence of a textual conflict. All that the Savings Clause requires — both before and after its amendment by the Second Codicil — is that the estate “receiv[e] the benefit of the marital deduction as hereinbefore set forth.” In order to receive the benefit of the marital deduction, the estate’s personal representative must file the appropriate form so as to qualify for QTIP treatment the property in which Mrs. Clancy will have a terminable interest — as relevant here, the Family Trust — and not exercise the various discretionary powers authorized under the will (e.g., Item Thirteenth) in a way that would undermine that election. Thus, the Savings Clause can be read to require merely that the Personal Representative fill out the appropriate form and abide by the other changes to the Family Trust to qualify the Family Trust for QTIP treatment.[10] Doing so in no way conflicts with paying the taxes out of the residual before the Family Trust and Older Children’s Trusts are funded and thereby maintaining the equal distributions specified in the will.

The Majority Opinion’s Approach

In adopting Mrs. Clancy’s preferred interpretation the Majority opinion finds an “apparent conflict”[11] and resolves it by holding that the Second Codicil “trumps” the specific directions in the will (in Item Third) concerning the payment of *617 taxes, even though the Second Codicil made no change to those directions. Majority op. at 599-600, 144 A.3d at 815-16. In my view, the Majority opinion is mistaken and there is no need to resort to such radical surgery.
The reasoning of the Majority opinion appears to be that the Savings Clause, by itself, mandates that the residual estate be distributed so as to obtain the maximum marital deduction with respect to the Family Trust, despite the fact that Item Third prescribes such treatment only for the Marital Share. This entails “setting apart” one-half of the residual destined for the Family Trust before the payment of taxes, with the result that the half of the residual devoted to the Older Children’s Trusts absorbs all of the responsibility for payment of taxes. Thus, an amendment of the will that on its face affected only the computation of taxes is being construed to alter the directions in the will for the payment of taxes and radically changes the relative distributions to the beneficiaries.
In essence, the Majority opinion, without explanation, reads the Second Codicil as expressing Mr. Clancy’s intent that the distribution of his estate maximize the marital deduction at all costs. There is simply no basis for this interpretation. The Second Codicil provides that the estate must receive “the benefit of the marital deduction as hereinbefore set forth,” not “the benefit of the maximum marital deduction,” so the text provides no support to the Majority opinion’s reading. As justification for its interpretation, the Majority opinion relies on a case in which the "will specifically provided that it was to preserve “the maximum marital deduction.” See Majority op. at 599-600, 144 A.3d at 816 citing Northeastern Pennsylvania Nat. Bank & Trust Co. v. U.S., 360 F.Supp. 116, 117 (M.D.Pa.1973) (“The direction to obtain the maximum marital deduction is the clearest and the predominant evidence of Rodgers’ intent.”) (emphasis added).[12] By contrast, the Savings Clause *618 of the Second Codicil in this case does not specify that the estate should receive the maximum possible marital deduction.[13]
The Majority opinion also reasons that, if taxes are paid out of any part of the residual estate before the Family Trust is funded, estate tax will be paid on funds that might otherwise have become part of the Family Trust and would have had the benefit of the marital deduction. Majority op. at 601-02, 144 A.3d at 816-17. But that appears likely to happen any time a testator opts out of the apportionment statute and elects to allocate the payment of some part of the tax to assets that could otherwise fund a distribution that would qualify for the marital deduction.[14] It is telling that the testator here referred to the Marital Share being “set apart” before the payment of taxes, but did not use that language in relation to the funds intended for the Family Trust — nor amend Item Sixth in that respect as part of the Second Codicil.
*619 Conclusion
Mrs. Clancy’s interpretation — adopted by the Majority opinion — would skew the distribution of the residual estate significantly in her favor contrary to basic provisions of the will while reducing the estate’s tax liability somewhat more than what it would otherwise be. It does so by interpreting the Savings Clause to effect a radical change in the estate plan without any explicit direction to do so. The Personal Representative’s construction of the will and codicil would treat the Savings Clause for what it is — a savings clause — and maintain the equal distribution of the residual specified in the will, both originally and as amended, while achieving the significantly reduced tax liability that is the evident aim of the Second Codicil.
Even assuming that the Second Codicil could mean what the Majority opinion reads it to mean — which is far from clear — we ordinarily resolve textual ambiguities in favor of consistency, not inconsistency. Where there are two possible interpretations of a provision of a codicil, one which conflicts with the original will and one which does not, our precedents favor adoption of the interpretation that does not conflict. Thus, even if the Second Codicil were ambiguous, it ought to be interpreted to be consistent with the original will rather than to contradict it.
Chief Judge Barbera and Judge Greene have advised that they join this opinion.

. The interpretation that the Majority opinion ascribes to the Older Children is the construction placed on the will and the codicil by Mr. Clancy's Personal Representative. The Older Children also defend that interpretation of the will and the codicil.

. There can be other adjustments, but they are not relevant here.

. A testator may have various reasons for passing a terminable interest in a trust to a spouse. For example, the testator may want to require that someone other than the spouse administer the assets in the trust so that the spouse receives the income from the assets but cannot deplete those assets.

. In this context, the term “usufruct interest” refers to a right to use the fruits or profits of the income resulting from the trust.

. This distinction between the computation of a tax and the payment of that tax is not unique. For example, one who receives the proceeds of a Roth IRA excludes those funds from the calculation of his or her income tax liability, but may well pay that liability with those funds. In the circumstance of the marital deduction, computation and payment of taxes are intertwined to the extent that funds used to pay estate taxes are not counted as part of the deduction. See 26 U.S.C. § 2056(b)(4)(A).

. The Orphans' Court decision in this case discoursed at some length on whether the apportionment statute applied before accepting the proposition that the apportionment statute did not apply.

. Specifically, it provided:
[N]either my personal representative nor my trustee shall have or exercise any authority, power, or discretion over the Marital Share, nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this Will that would in any way prevent my estate from receiving the benefit of the marital deduction as hereinbefore set forth.

. There were two codicils to the will. The First Codicil is not at issue here.

. That portion of the Second Codicil provides, in pertinent part:
[NJeither my personal representative nor my trustee shall have or exercise any authority, power or discretion over the Marital Share or the Non-Exempt Family Residuary Trust or the income thereof, or the property constituting the Marital Share or the Non-Exempt Family Residuary Trust, nor shall any payment or distribution by my personal representative or my trustee be limited or restricted by any provision of this Will, such that, in any such event, my estate would be prevented from receiving the benefit of the marital deduction as hereinbefore set forth.

. The Majority opinion appears to acknowledge this. See Majority op. at 598, 144 A.3d at 815 ("The Older Children and Mrs. Clancy, as well as the personal representative, all agree that the Second Codicil qualified the Family Trust for the QTIP election”).

. At least, the Majority opinion sometimes appears to do so. On the other hand, the Majority opinion also states, "The Second Codicil did not, however, specifically address, in any way, the Will provision that instructed that taxes were to be paid out of the residuary estate of which the Family Trust was a part.” Majority op. at 599, 144 A.3d at 815. But if that were true, then there would be no conflict, and that provision of the original will concerning payment of taxes from the residual after the Marital Share is set aside should remain operative.

. The Majority opinion also cites an IRS revenue ruling that is similarly distinguishable from this case. See Majority op. at 600-01, 144 A.3d at 816-17 (citing Rev. Rul. 75-440 (1975)). That ruling concerned a will that directed the creation of a trust in an amount equal to the *618 "maximum marital deduction” and gave further detailed directions as to the computation of that amount to ensure that the maximum amount was transferred to the trust. Consistent with those provisions, a savings clause in the will limited any action by the testator's Fiduciary that would "lose all or any part of the tax benefit afforded my estate by the Marital Deduction.” By contrast, the Savings Clause in Mr. Clancy's will does not contain language concerning the maximum marital deduction or the loss of "any part” of the marital deduction.

. It is true, as the Majority opinion observes (Majority op. at 582-84, 144 A.3d at 805-06) that federal law has been amended over the years to remove a statutory cap on the maximum marital deduction. Of course, that does not mean there is no longer a "maximum” deduction for particular circumstances.

. For example, in Estate of Fine v. Commissioner, 90 T.C. 1068 (1988), the will directed the payment of taxes out of the residual estate "without apportionment” and then provided for distribution of the remainder of the residual in specific shares to the testator's widow and other relatives. A savings clause limited the authority of the executor to do anything that would "lose all or any part of the tax benefit afforded by the marital deduction.” The Tax Court construed the will to provide for payment of taxes out of funds that could otherwise have funded the widow’s share and therefore would have qualified for the marital deduction. The court also noted that the testator contemplated such a result in opting out of the state apportionment statute.