CHARLES WALLACE, Guardian of JENNIE WARD MAITLAND *vs.* MARY M. DU BOIS, and others.

*Legacy to a Child—Advancement—Ademption—Intention—Parol evidence—Lapse of Legacy—Sec. 304, of Art. 93, of the Code.*

Where a father gives a legacy to his child, without stating any particular purpose for which it is given, it will be regarded as a portion of the estate intended for such child. And if the testator afterwards makes an advancement to such child on his marriage, or upon his going into business, the money thus advanced will be presumed to be in payment or satisfaction of the legacy, either *pro tanto* or in full, as the money advanced may be equal to or less than the legacy.

And if the money is advanced or paid by the father under such circumstances as not to raise a presumption of satisfaction of the legacy, parol evidence may be offered to show that such was his intention.

A testator by his will made in 1879, gave a legacy of $6,000 to his son L., who died in 1883, in the life-time of his father, leaving a daughter, his only child and heir-at-law. The testator died in 1884, without revoking the bequest to L., and among his papers were found sundry promissory notes and other evidences of the indebtedness of L. to him. The proof showed that three of the promissory notes were given for money advanced by his father for the purpose of setting L. up in business, and that the money thus advanced was intended by the father, and so understood by L. to be in part payment of the legacy. There was no proof to show that one other note and the further evidences of the indebtedness of L. to the testator, were regarded by him as part satisfaction of the legacy. HELD:

That the amount of the three promissory notes must be deducted from the legacy, but that the balance must be regarded as a debt due to the father's estate.

L. having died in the life-time of the testator, the legacy to him did not, by virtue of section 304, of Article 93, of the Code, lapse, but passed directly to his daughter unaffected by his debts.

APPEAL from the Circuit Court of Baltimore City.

Benjamin Maitland died in April, 1884, leaving a last will and testament duly executed on the 23rd of June, 1879, by which he appointed Charles E. Phelps and John V. L. Findlay his executors. The estate was fully administered, except as to that portion of it which has given rise to the present controversy. The testator bequeathed to his son, Lindley H. Maitland, the sum of six thousand dollars. This son had married, and there was fruit of the marriage the infant, Jennie Ward Maitland. The father having deceased, Charles Wallace was appointed the guardian of the child, and as such guardian claimed the whole of the legacy left to the father. Creditors of Lindley claimed that they should be paid the amount of their bills out of his distributive share. Legatees under the will of Benjamin Maitland claimed that certain promissory notes of Lindley, given to his father and found among his effects, as also the amount of receipted bills paid by him for the funeral expenses of Lindley and of his wife, should be treated as a partial ademption or satisfaction of the legacy left to the said Lindley. On a bill filed by the executors to obtain the advice and direction of the Court as to their duty in respect of these conflicting claims, a decree was passed rejecting the claims of the creditors of Lindley, and directing that the promissory notes executed by the said Lindley, and the bills for funeral expenses of said Lindley and his wife, should be treated and considered as a partial ademption and satisfaction of the legacy to the said Lindley from his father, and rejecting the claim of the guardian of Jennie W. Maitland to receive the amount of said promissory notes and bills for funeral expenses. From this decree the guardian appealed.

The cause was argued before ALVEY, C. J., ROBINSON, RITCHIE, and BRYAN, J.

*Thomas Mackenzie*, for the appellant.

An advancement, in legal contemplation, is simply the giving, by anticipation, the whole or part of what it is supposed the child or party advanced would be entitled .to receive on the death of the party making the advancement. It does not involve the elements of legal obligation or *future liability* on the part of the party advanced, but it is a pure and irrevocable *gift*, and must result from a complete act of the intestate in his life-time by which he divests himself of all property in the subject. *Harley vs. Harley, et al.*, 57 *Md.*, 342.

It is entirely contrary to the character of an advancement, that it should be viewed in the light of a debt upon interest. * * * It has never been thought that it was *borrowed capital*, on which interest was to accumulate. *Osgood vs. Breed*, 17 *Mass.*, 358.

If security or note is taken for repayment, it is a debt and not an advancement. *Harley vs. Harley, et al.*, 57 *Md.*, 342–3 ; *High's Appeal*, 21 *Pa. St.*, 283 ; *Barton vs. Rice*, 22 *Pick.*, 508; *Gray vs. Gray*, 22 *Alabama*, 233–236.

The exaction, therefore, of the securities shows clearly that Benjamin Maitland did not regard these loans at the time as in the nature of a partial satisfaction or ademption of the legacy—and his retaining these securities until his death shows further a continuance of his intention to treat them as *debts*.

Lindley having pre-deceased his father subsequently to the execution of the will, the legacy to him is saved from lapsing by the operation of the Act of 1810, ch. 34, (Art. 93, sec. 304, of the Code) ; and this Court, in the case of *Glenn vs. Belt*, 7 *G. & J.*, 367, decided that "The time of the transfer" of such legacy "is the death of the testator." The object of the *statutory* transfer would be the person *in esse*, entitled by law to the distribution of the legatee's estate in intestacy—his representative. The executor or administrator of such deceased legatee could not take as

assets that which never could have been the testator's or intestate's. Affirmed and recognized in *Hays vs. Wright,* 43 *Md.,* 125. See also *Rodgers, et al. vs. Rodgers, et al.,* 7 *Albany Law Jour.,* 142; *Fisher vs. Hill,* 7 *Mass.,* 86; *Paine vs. Prentiss,* 5 *Met. (Mass.,)* 399.

The legacy never vested in Lindley H. Maitland, but passed immediately upon the death of the testator to his (Lindley's) child Jennie Ward Maitland—and she is entitled to the whole of it, without any deduction or abatement whatever.

The doctrine of equitable set-off follows the rules of law and principles applicable to the law of set-off.

In *Scott vs. Scott,* 17 *Md.,* 86, the Court refused to allow a debt due from a deceased father to be set-off against one due to the daughter from the creditor of the father, (although the daughter, as his heir-at-law, was in possession of property which might eventually be made liable for the debt), because of the want of that mutuality which the law requires. See also *Robertson vs. Parks,* 3 *Md. Ch. Dec.,* 71; *Gibbs vs. Cunningham,* 4 *Md. Ch. Dec.,* 325.

Nor can the presumption against a double portion by any possibility arise in this case. *Pom. on Eq.,* secs. 556, note 1, 562.

*John V. L. Findlay,* for the appellees.

There is a presumption against double portions, where the donor of the benefit is a parent or one standing *in loco parentis.* The donor here was the father, and this fact confronts the appellant with a presumption which he must overthrow, and which in the absence of testimony of a negative kind, will of itself sustain the appellees' contention. 2 *Story's Eq.,* sec. 1099; *Cooper vs. Cooper, L. R.,* 8 *Ch.,* 813–819; 1 *Pom. Eq.,* sec. 523, p. 570; *Ex parte Pye,* 18 *Ves.,* 140.

It is easier to sustain this presumption when the will precedes the settlement, than where it succeeds it, and by

analogy, where the will precedes a gift which is claimed to work a satisfaction or ademption. *Lord Chichester vs. Coventry, L. R.*, 2 *H. L.*, 71–91.

The testator was under no obligation to the legatee. The will being a revocable instrument, the intention to revoke it, by the substitution of a benefit for a precedent gift, will be more readily presumed than if there had been a prior obligation on the part of the testator to the legatee, which could not be discharged without his consent. *In re Tussaud's Estate, L. R.*, 9 *Ch. D.*, 363–380; 1 *Pom. Eq.*, secs. 524, 554; *Suisse vs. Lowther*, 2 *Hare*, 424, 433, 435; *Pym vs. Lockyer*, 5 *My. & Cr.*, 34–46.

This doctrine is applicable to a partial as well as to a total satisfaction. Indeed the earlier cases carried the presumption so far as to turn a partial satisfaction into a complete ademption of the legacy. *Ex parte Pye*, 18 *Ves.*, 140; 1 *Pom. Eq.*, sec. 555.

This doctrine has been repudiated by the later decisions, and the law now is that if a subsequent advancement equals or exceeds the prior legacy it is a satisfaction thereof in full—if less, then *pro tanto.* 1 *Pom. Eq.*, sec. 555.

It doesn't matter in what form the advancement is made. Even if it is in the form of a loan, represented by some kind of security taken from the legatee, the effect is the same. *Miner vs. Atherton's Ex'rs*, 11 *Casey*, 528; *Garrett's Appeal*, 3 *Harris*, 512; *Richards vs. Humphreys*, 15 *Pick.*, 133; *Hine vs. Hine*, 39 *Barb.*, 507.

Parol evidence is admissible to establish either a total or partial ademption. 2 *Taylor on Ev.*, page 999, sec. 1048; *Wigram Extrinsic Evidence*, 2d *Am.*, last *London Ed.*, pages 271–272, and notes.

When a parent makes testamentary provision for a son, and afterwards pays money to set him up in the world, the legacy is adeemed. *Hartop vs. Whitmore*, 1 *P. Wms.*, 681; *Rosewell vs. Rosewell*, 3 *Atk.*, 77; *Biggleston vs. Grubb*, 2 *Atk.*, 48; *Kreider vs. Boger*, 10 *Watts*, 56–7.

Parol declarations, made subsequently to advancement, are admissible to show intention of testator. 2 *Roper on Legacies*, 576 ; *Rosewell vs. Rosewell,* 3 *Atk.,* 77 ; *Haverstock vs. Sarbach,* 1 *Watts & Sergt.,* 393 ; *Zeiter vs. Zeiter,* 4 *Watts,* 212.

If Lindley had survived his father it is obvious that he would have been compelled to pay *all* the bills paid for him by his father. Does the accident of his death occurring before that of his father, defeat not only claims of creditors, but also the claim of the estate itself from which the legacy is derived? Such a construction would be grossly inequitable, and could only be sustained by language too clear for doubt.

The Act of 1810, chapter 34, transfers the right, estate and interest, in the property mentioned in the devise or bequest, *as if such* devisee or legatee had survived the testator. *Sec.* 304 *of Art.* 93 *of the Code.*

The object of the law was to point out the persons who should take, and this is done by the words "as if the legatee had survived the testator." *Glenn vs. Belt,* 7 *G. & J.,* 366.

In other words, the next of kin of Lindley, or his personal representatives, take through him as if he had survived the testator and then died before distribution was made under the Act of 1798, ch. 101.

If this is the true construction, then, by the very terms of that Act, they must take Lindley's share, less by what he received.

ROBINSON, J., delivered the opinion of the Court.

This is a question in regard to ademption or satisfaction of a legacy. The testator gave to his son, Lindley, a legacy of six thousand dollars, and to each of his other children he also gave legacies, except Burgwyn, who had received already, the testator says, more than his share of the estate.

Wallace *vs.* Du Bois, *et al.*

The will was made in 1879, and Lindley died in 1883, in the life-time of his father, leaving a daughter, the appellant, his only child and heir-at-law.

The testator died in 1884, without revoking the bequest to Lindley, and among his papers were found three promissory notes of Lindley, dated February 10th, April 26th, and July 20th, 1882, respectively, amounting in the aggregate to two thousand dollars—also a promissory note dated August 2nd, 1880, for $187.30—also accounts of the funeral expenses of both Lindley and his wife, all of which were paid by the testator.

These notes and accounts it is contended, are to be considered as an ademption or satisfaction *pro tanto* of the legacy to Lindley.

The law in regard to the ademption of legacies is quite well settled, and the only difficulty lies in its application to the facts of each particular case. Where a father gives a legacy to a child without stating any particular purpose for which it is given, the legacy is in itself regarded as a portion of the estate intended for such child. And if the testator afterwards makes an advancement to such child on his marriage or upon going into business, the money thus advanced will be presumed to be in payment or satisfaction of the legacy, either *pro tanto* or in full, as the money advanced may be equal to or less than the legacy. This presumption is founded on the equitable principle that a father in making a distribution of his property by will among his children, means to give to each the amount which he ought to have, in view of the claims of all upon his bounty ; and if he afterwards deems it proper to make an advancement to one or more of them, the amount thus advanced ought to be deducted from the portion of the child benefited. It is a rule adopted by Courts of equity to prevent a child from getting a double portion, an inequality which it is but fair to presume the testator did not intend. *Shudal vs. Jekyll,* 2 *Atk.,* 518; *Ex parte·Pye,* 18

*Ves.*, 150; *Suisse vs. Lowther*, 2 *Hare*, 424; *Pym vs. Lockyer*, 5 *My. & Cr.*, 34 ; *Kirk vs. Eddowes*, 3 *Hare,* 509; *Hopwood vs. Hopwood*, 7 *House of Lords' Cases*, 726.

And if the money is advanced or paid by the father under such circumstances as not to raise a presumption of satisfaction of the legacy, parol evidence may be offered to show that such was his intention.

Now in this case the three promissory notes, amounting to two thousand dollars, are ordinary promissory notes, and upon their face import merely an indebtedness on the part of Lindley to the testator. But the proof shows they were given for money advanced by his father for the purpose of setting him, Lindley, up in business, and further, that the money thus advanced was intended by the father, and so understood by Lindley, to be in part payment of the legacy. And this being so, the amount of these notes must be deducted from the legacy. As to the note, however, dated August 2nd, 1880, for $187.30, there is nothing on its face, nor is there a particle of proof, to show that it was given for money advanced on account of the legacy. It bears date eighteen months before Lindley started in business, and in the absence of proof to the contrary it must be regarded merely as a debt due by him to his father. And so as to the accounts for the funeral expenses of Lindley and his wife. These accounts were paid, it is true, by the testator, but the evidence does not show that they were paid by him on account or in part satisfaction of the legacy. Mrs. Du Bois says, it was her father's intention to deduct them from the legacy—that he often spoke about it. But what he said, and at what time the declarations were made, does not appear. And besides, upon cross-examination, her father, she said, always expected to be paid the amount advanced by him in payment of the funeral expenses. If this be so—if he considered it an indebtedness and not a gift, the payment by him would not operate as an ademption *pro tanto* of the

Wallace *vs.* Du Bois, *et al.*

legacy.   For the distinction between a loan and a gift is the right reserved by the father to demand payment of the money—if this right be reserved, it is a loan and not a gift.   *Harley vs. Harley, et al.,* 47 *Md.,* 340.

Lindley having died in the life-time of the testator, the legacy to him did not, by operation of the Code, *lapse,* but passed directly to his daughter.   *Art.* 93, *sec.* 304.   It constituted no part of the assets in the hands of his executor or administrator.   His daughter took it by force of the statute.   This was expressly decided in *Glenn vs. Belt,* 7 *G. & J.,* 360 : " The time of the transfer," says the Court in that case, " is the death of the testator, and as the legatee died before the testator he would not be the person meant as the object of the statutory transfer.   But the law refers to such persons then *in esse,* entitled by law to the distribution of the legatee's estate in case of intestacy—that is, his representatives."

So here, the legatee having died in the life-time of the testator, the daughter of the legatee takes the legacy directly from the testator.   She takes unaffected by the debts of her father, the deceased legatee.   His creditors have no right to claim the payment of their debts out of such a legacy.

For these reasons the decree below will be affirmed in part, and reversed in part, and the cause remanded.

*Decree affirmed in part, and*
*reversed in part, and*
*cause remanded.*

(Decided 10th March, 1886.)