HARRY M. BENZINGER, Executor of Eleanor M.
Thompson,

*vs.*

ANNIE C. HEMLER and ALBERT S. GILL, Executor
of Annie G. Mitchell.

*Privileged communications: attorney who drafted will.*

The privilege that protects communications which clients
make to their attorneys is the client's, and not the attorney's,
privilege.                                    p. 583

Unless otherwise provided by statute, communications by a
client to the attorney who drafted his will, in respect to that
document and all the circumstances that occurred between them,
leading up to its execution, are not, after the death of the client,
within the rule as to privileged communications in a suit be-
tween the testator's devisees and heirs at law or other parties
claiming under him.                          p. 586


*Decided June 24th, 1919.*


Appeal from the Superior Court of Baltimore City.
(Dawkins, J.)


The facts are stated in the opinion of the Court


The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner, Stockbridge and Ad-
kins, JJ.


*Charles F. Harley* and *Harry M. Benzinger,* for the appel-
lant.


*Allen A. Davis and John F. Oyeman* (with whom were *N.
Rufus Gill & Sons* and *Edward M. Hammond* on the brief).
for the appellees.

PATTISON, J., delivered the opinion of the Court.

Annie G. Mitchell, when more than eighty years of age, after making certain small bequests to others, devised unto her servant or attendant, Annie C. Hemler, one of the appellees, all the rest and residue of her estate to the exclusion of her heir at law.

A caveat to the will was filed by Eleanor M. Thompson, a niece of the testatrix, who died while the proceedings thereunder were pending, and Harry M. Benzinger, her executor, was, upon his petition, made a party plaintiff in substitution for her. The caveat contained a number of issues, but at the conclusion of the plaintiff's case, all were eliminated except the one of undue influence.

In the course of the trial, Albert S. Gill, her attorney, who was the draftsman of the will, and who was also named as executor therein, was offered as a witness by the plaintiff, and was asked as to the transactions, circumstances, and instructions given to him by the testatrix in connection with the preparation of the will, and what was said by her in relation thereto at the time the same was prepared.

The defendant objected to the admission of this testimony on the ground that it was a privileged communication. The Court sustained the objection and this ruling of the Court presents the main question upon this appeal.

LORD BROUGHAM, in the early case of *Greenough* v. *Gaskill*, 1 My. & K. 98, in speaking of the rule which protects from disclosure all confidential communications between solicitor and client, said: "It is founded on a regard to the interest of justice, which cannot be upholden, and to the administration of justice, which cannot go on without the aid of men skilled in jurisprudence, in the practice of the courts, and in those matters affecting rights and obligations which form the subject of all judicial proceedings. If the privilege did not exist at all, every one would be thrown on his own legal resources; deprived of all professional assistance, a man would not venture to consult any skillful person, or would only dare to tell his counsellor half his case."

Professor Wigmore in his work on *Evidence,* Vol. 4, par. 2314, after discussing the question of privilege as applicable to attorney and client in cases, other than will contests, says: "But for wills a special consideration comes into play. Here it can hardly be doubted that the execution and especially the contents are impliedly desired by the client to be kept secret during his life time, and are accordingly part of the confidential communications. It must be assumed that during that period the attorney should not be called upon to disclose even the fact of a will's execution, much less its tenor. But, on the other hand, this confidence is intended to be temporary only. That there may be such a qualification to the privilege is plain."

The privilege is the clients and not the attorney's. The rule exists for the benefit not of the attorney but of the client. It does not rest simply upon the confidence reposed by the client in the solicitor, for there is no rule in other cases in which, at least, equal confidence is reposed; in the cases, for instance, of medical advisors and patients, and of clergymen and prisoners. It seems to rest not upon the confidence itself but upon the necessity of carrying it out. *Russell* v. *Jackson,* 9 Hare, 387.

In the case of *Russell* v. *Jackson, supra,* which seems to be generally regarded as the leading case upon the rule, the contest was between the heirs and devisees of the will, and the Court in that case said: "The courts, when called upon to apply it, must of course have regard to the foundation on which it rests, and not extend it to cases which do not fall within the mischief it was designed to prevent. In cases where the rights and interests of the client or of those claiming under him come in conflict with the rights and interests of third persons, there can be no difficulty in applying the rule."

In that case, as in the case before us, the question was to which of the two parties claiming under the client the property belonged. The learned chancellor there said, "it would seem to be a mere arbitrary rule to hold that it belongs to

one of them rather than to the other." In that case the distinction was made between cases in which the contest was between parties claiming under the client and those cases where the contest was between parties claiming under the client and third persons, holding that in the first of these cases the rule did not apply, while in the second, it did. *Blackburn* v. *Crawford,* 3 Wallace, 175.

In *Glover* v. *Patten,* 165 U. S. 394, it is said: "In a suit between the devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar documents, are not privileged, while such communications might be privileged if offered by third persons to establish claims against an estate. They are not within the reason of the rule requiring their exclusion, when the contest is between the heirs or next of kin."

*In re Young's Estate,* 33 Utah, 382; *Amer. & English Annotated cases,* Vol. 14, 598, the Court, after declaring that the statute of that state was but declaratory of the common law, said: "The material question, therefore, is, did the privilege at common law extend to will contests between heirs of the deceased ancestor, where the issues of duress, undue influence, or insanity are involved? * * * In some of the cases a distinction is sought to be made between a *protestant* and a contestant of a will, and it is accordingly held that the privilege does not apply when the attorney is called in support of a will. Such cases, however, are not numerous, and the reason for the holding is fairly stated in the case of *In re Nelson,* 132, 64 Pac. 294. Where the grounds of contest are duress, undue influence, or incapacity, we cannot perceive upon what reason such a distinction can arise. The privilege belongs to the client and he may waive it or enforce it as to him may seem proper. The policy upon which the privilege rests is humane in purpose, practical in its application, and salutary in its results when applied as it was intended it should be under the rules of the common law. The sole purpose of the privilege was to protect the client's interest. Under it he could freely communicate to the attorney all matters relating

to a controversy between himself and another without fear of
having such matter divulged by his attorney. In this way
the client could obtain the benefit of the advice and counsel
of one learned in the law without being exposed to the dan-
ger of having his statements turned into a weapon against
him. If such were not the law no man could safely seek or
obtain advice and counsel from an attorney, and the very
purpose for which such advice is usually sought would be
frustrated. But do these reasons apply to will contests where
capacity or undue influence is in issue? What is the purpose
of such a contest? It can have but one purpose, namely, to
determine whether or not the document presented as the last
will and testament of such a deceased person is really such.
Can it be contended upon any reasonable ground that the
testator had any interest in or desire to conceal his real inten-
tions in such a matter when such intentions are called in ques-
tion after his death? Did he not know when he had the will
prepared that it would have to be made public and established
as his will in a proper Court before it could become effective?
If, therefore, the document produced is not actually his will,
but rather that of another who induced him by undue influ-
ence over him to make it, can it be said that the deceased
wants such a will established as his own? Would not the law
in holding to such a policy foster that which it abhors, name-
ly, deceit and fraud? In this regard, who may raise the
question? Certainly not strangers to the estate, but only
those who are either heirs at law of the deceased or those who
are beneficiaries of his bounty and made so by the will. If
a particular beneficiary obtained the bequest through duress,
deceit, or undue influence over the mind of the testator,
should such beneficiary be permitted to invoke this most salu-
tary privilege against the real heir, and thus, perhaps, be
enabled to conceal the very thing the law abhors, and for
which it wisely requires the probate of all wills? Moreover,
is the right to invoke the privilege to be given to one heir
who proposes the will, and denied to the other who opposes
it?

The authorities cited above make it reasonably clear that the right to invoke the privilege was withheld from both at common law when the issues involved affected the integrity of the will. If this be so, why should not the attorney who prepared the will be required to disclose all that he knows concerning the real state of mind of the testator? The attorney may know by whom and to what extent the testator was influenced. Again, he may know that the testator was not influenced at all, and may further know the very reasons that controlled him in doing what he did in making the will. In the first instance, should the person causing the will to be made be protected by the privilege? And in the latter case, should the one who claims undue influence be permitted to invoke it and thus make certain circumstances to which he points and which may be easily explained to stand as the real truth? The privilege was not extended to will contests at common law and, as our statute is no broader than the common law upon the subject, we have no right, even if we were inclined to do so, to extend the privilege to will contests."

The rule, we think, is well stated in the note *In re Young,* 17 L. R. A. (N. S.) 108, in which it is said: "It may be laid down as a general rule of law, gathered from all the authorities, that, unless provided otherwise by statute, communications by a client to the attorney who drafted his will, in respect to that document, and all transactions occurring between them leading up to its execution, are not, after the client's death, within the protection of the rule as to privileged communications, in a suit between the testator's devisees and heirs at law, or other parties who all claim under him." *Russell* v. *Jackson, supra; In re Young, supra; Glover* v. *Patten, supra; Kern* v. *Kern,* 154 Ind. 29; *Scott* v. *Harris,* 113 Ill. 447; *O'Brien* v. *Spalding,* 102 Ga. 492; *in re Loree Estate,* 158 Mich. 377; 2 *Wharton on Evidence,* 591; *Blackburn* v. *Crawford,* 3 Wallace, 175.

The defendant, in support of her contention that the privilege exists in this case and that the evidence offered should

not have been admitted, relies chiefly upon the case of *Chew* v. *Farmers' Bank,* 2 Md. Ch. 231, which was an action originally begun by a widow to assert certain claims against lands owned by her husband at the time of his death, but which the devisees under his will had conveyed to strangers. During the litigation the widow died, and her executor was admitted as complainant in her stead, and the action revived. She had left a will, and, upon objection by her executor, the attorney who drew her will was not permitted to testify as to the provisions therein relative to the claims in question, or as to the reasons assigned by her for making such provisions, or as to anything which occurred in the conversation between her and the witness upon the subject. The Court declared that if anything was said in the course of that conversation between the deceased and her attorney—they standing towards each other in the relation of legal adviser and client—which could, if revealed by the witness, operate to her prejudice, the rule prohibiting such revelations applied.

In that case the defendant did not claim through the testatrix or under the will concerning which the evidence was offered. They were not only not claiming under her, but were resisting the claim made by her, and the action of the Court in refusing to admit the evidence was altogether consistent with the rule above stated.

The defendant also cited the case of *Gurley v. Park,* 135 Ind. 442, in support of her contention. The Indiana Court, in discussing that case in the subsequent case of *Kern v. Kern, supra,* said: "While the rule announced by the Court in *Gurley v. Park* is doubtless a correct one in disputes between the client's representatives on the one hand and strangers on the other, we do not think it applies where both the litigating parties claim under the client. The attention of the Court does not appear to have been called to this distinction, and none of the cases bearing upon it is referred to in the opinion. We regard this qualification of the general rule as a very material one, and, to the extent that the opin-

ion in *Gurley* v. *Park* conflicts with the view we have expressed that case is overruled."

There are cases in which evidence of the character mentioned, where all the parties claimed under the testator, has been excluded, but most of these, if not all of them, are based upon statutes and not upon the common law.

The Court erred, in our opinion, in not permitting Major Gill, the draftsman of the will, to testify as to the transactions, circumstances and instructions given by the testatrix to him in connection with the will and its preparation, as well as what was said by her at such time relative thereto.

It is contended, however, by the appellee that even though the Court erred in this respect, such error was harmless, in view of other admitted testimony. In this we cannot agree with her, in view of the relation existing between the witness and the testatrix, and the weight that would naturally be given to the evidence of such witness by the jury.

But the Court was right in excluding the evidence of others as to what Mr. Gill had told them the testatrix had said to him at such time, as it violated the rule against the admission of hearsay testimony.

The Court granted the defendant her second and third prayers to which ruling of the Court the plaintiff excepted. The third prayer of the defendant, it is true, is not as full as the prayer in *Hiss* v. *Weik,* 78 Md. 439, and in other cases approved by this Court; but we do not regard it as defective upon the evidence of undue influence found in this record, although it may become necessary in other cases to insert the omitted parts of the prayer to which we have referred, where the evidence of undue influence in such case differs in character from the one before us; and we find no error in the court's rulings upon the defendant's prayers. The rulings of the Court below, however, will be reversed for the error above mentioned.

*Rulings reversed, and new trial awarded.*