874 A.2d 411

YIVO INSTITUTE FOR JEWISH RESEARCH

v.

PAUL ZALESKI, Personal Representative
of the Estate of Jan Karski, et al.

No. 56, Sept. Term, 2004.

Court of Appeals of Maryland.

May 11, 2005.

656

Philip L. O'Donoghue (Tanya C. Bernstein, Furey, Doolan & Abell, LLP, Chevy Chase, MD, on brief), for petitioner.

Charles H. Fleischer (Oppenheimer, Fleischer & Quiggle, P.C., Deborah G. Matthews, Robert E. Ward & Associates, P.C., Bethesda, Jane Moretz Edmisten, Jane Moretz-Edmisten & Associates, P.C., Washington, DC, on brief), for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

In this case we are asked to revise the Maryland law of ademption by satisfaction and require that a testator's intention to adeem a legacy can be proven only by a writing made contemporaneous with an *inter vivos* gift. . Petitioner, in its attempt to persuade us to change the law, relies in part on the assertion that the doctrine of ademption is in conflict with Md.Code (2001), § 3–106 of the Estates & Trusts Article, the Restatement (Third) of the Law of Property (Wills and Other Donative Transfers) § 5.4 (1999), and the Uniform Probate Code § 2–609 (amended 1990). In addition, petitioner assails the decision of the intermediate appellate court, *YIVO Institute for Jewish Research v. Zaleski,* 156 Md.App. 527, 847 A.2d 510 (2004), and contends that the Court of Special Appeals misapplied the law of ademption in its review of the decision of the Orphans' Court. For reasons to follow in this opinion, we decline the invitation to rewrite the law of ademption and affirm the judgment of the intermediate appellate court.

On September 25, 2002, the Orphans' Court for Montgomery County [1] denied petitioner's, the YIVO Institute for Jewish Research ("YIVO"), request to receive distribution of a bequest in the Will of Jan Karski ("Dr. Karski"). The Orphans' Court concluded that Dr. Karski's *inter vivos* gifts to YIVO were intended by Dr. Karski as a fulfillment of the legacy under his will. The petition was opposed by respondents, the personal representative of Dr. Karski's estate and two residuary legatees under Dr. Karski's Will—the American Center of Polish Culture and the Kosciusko Foundation. YIVO appealed to the Court of Special Appeals seeking reversal of the decision of the Orphans' Court.

---

1. There is no separate Orphans' Court for Montgomery County as is the case for nearly every other Maryland subdivision. Rather, the case was heard and decided by a judge of the Circuit Court for Montgomery County, sitting as the Orphans' Court, pursuant to Md.Code (1974, 2001 Repl.Vol.), § 2–106(c) of the Estates & Trusts Article.

YIVO argued in the Court of Special Appeals, as they do here, that the specific bequest to YIVO in the will was not adeemed by the lifetime gifts.[2] YIVO also contends that the Orphans' Court erred in admitting the testimony of Dr. Hanna Kaya Ploss ("Dr. Ploss") as to oral statements made by Dr. Karski after satisfaction of Dr. Karski's pledge to YIVO. The intermediate appellate court affirmed the decision of the Orphans' Court stating that the Orphans' Court was not clearly erroneous in its conclusion that Dr. Karski intended for his bequest to YIVO to act only as security for his obligation to the organization. It also affirmed the admission of Dr. Ploss's testimony deferring to the trial court's evidentiary rulings and factual findings. *YIVO*, 156 Md.App. 527, 847 A.2d 510.

By petition for writ of certiorari to this Court, YIVO challenges the judgment of the Court of Special Appeals asserting that the lower courts erred in failing to require written evidence of intent to adeem, misapplied the presumptions of prior case law regarding ademption by satisfaction, and improperly admitted and/or credited Dr. Ploss's testimony. We granted *certiorari* to consider YIVO's contentions. *YIVO v. Zaleski,* 382 Md. 688, 856 A.2d 724 (2004).

## Background

Dr. Karski was a hero of the Polish underground during World War II. He reported to Allied powers on the events transpiring in Poland until he was captured by the Nazis.[3] During his confinement he was tortured and suffered greatly. After attempting suicide to avoid disclosures that could have endangered the underground movement, Dr. Karski was taken to a Nazi-controlled hospital in critical condition. He was rescued from the hospital by members of the underground movement. Several lives were lost during the rescue effort

---

2. Adeem is defined as "to revoke or satisfy (a willed gift) by some other gift." BLACK'S LAW DICTIONARY 42 (8th ed., 2004).

3. The following biographical information regarding Dr. Karski is derived from the briefs of the parties.

and one rescuer, Zofia Hanuszkiewicz ("Zofia"), spent several years in a German prison camp for her involvement.

After the war, Dr. Karski emigrated to the United States and settled in Chevy Chase, Maryland. Dr. Karski remained committed to Polish culture until his death, developing ties with several Polish organizations, including The Kosciusko Foundation ("Foundation") and The American Center of Polish Culture ("Center"). He spent much of his life attempting to mend the relationship between Jewish and non-Jewish Poles which had been fractured by events occurring in Poland during WW II. Following the death of his wife, Pola Nirenska, Dr. Karski developed a plan to memorialize both of them by creating an award to acknowledge Jewish authors of Polish origin.[4] In 1992, Dr. Karski entered into an agreement with YIVO to establish an endowment fund to provide an annual award of $5,000 to authors whose works focused on or otherwise described contributions to Polish culture and Polish science by Poles of Jewish origin. Dr. Karski formalized his pledge in a letter dated November 25, 1992 ("Letter Agreement"). The Letter Agreement provided, in pertinent part:

The endowment will consist of a gift of $100,000.00 in cash to be made by me to YIVO in my will, or in cash and/or marketable securities of the same total market value during my lifetime.

A second letter, identical to the November 25, 1992, letter, was signed February 25, 1993. It is unclear from the record, however, why the second letter was executed.

On October 25, 1993, eight months after writing the second Letter Agreement, Dr. Karski executed his will. Article SECOND of the will provides:

I hereby give and bequeath to YIVO—Institute for Jewish Research (tax exempt organization Dr. Lucjan Dobroszycki and Dr. Ludwik Seidenman)—all my shares of Northern

---

4. The annual award was designed to recognize "living authors of published works ... dealing with or otherwise describing contributions to Polish culture and Polish science by Poles of Jewish origin and by Polish Jews from the Middle Ages to the current time."

States Power (N.St.Pw.) of which 400 share certificates are located in Riggs National Bank, Friendship Branch (4249 block of Wisconsin Avenue), Safe Deposit Box 240, and the rest approximately 1,780 shares, is held by Northern States Power as automatic reinvestment. All these shares (approximately 2,180) should be transferred (not sold) to YIVO.

At the time the will was executed, Northern States Power Company shares had a value of about $100,000. At the time of Dr. Karski's death the shares were worth $113, 527.64.

In addition, pursuant to the Third Clause of the will, stock in two other utilities, New York State Gas & Electric and Ohio Edison, was left to the Washington Performing Arts Society ("WPAS"). Most of the remaining estate was bequeathed in equal shares to the Foundation, the Center, three of Dr. Karski's elderly relatives in Poland, and Zofia, the woman who had helped rescue him from the hands of the Nazis.

During the period November 28, 1995, to January 22, 1996, Dr. Karski made a series of lifetime gifts of utility stocks to YIVO consisting of 1,809 shares of New York State Electric & Gas Corporation, 2,300 shares of Ohio Edison Company, and cash.[5] The value of these stock gifts totaled $99,997.69. On February 7, 1996, Dr. Karski made a further gift of $2.31, bringing the total value of the gifts to YIVO to exactly $100,000. Dr. Karski did not amend his will to reflect the *inter vivos* transfer of utility stock and cash to YIVO.

Dr. Karski died on July 12, 2000. At that time, the shares of Northern States Power Company remained an asset of his estate. Paul Zaleski, who qualified as personal representative,

---

5. Because the New York State Gas & Electric and Ohio Edison shares that were given to YIVO during Dr. Karski's lifetime were the same stock as bequeathed to WPAS in the will, the bequest to WPAS was treated by the Personal Representative as adeemed by extinguishment. Ademption by extinguishment generally applies to specific legacies and occurs because the unique property that is the subject of a specific bequest has been sold, given away, or destroyed, or is not otherwise in existence at the time of the testator's death. BLACK'S LAW DICTIONARY 42 (8th ed., 2004). In this case, the shares bequeathed to WPAS were given away and, thus, not in existence at the time of Dr. Karski's death.

denied YIVO's request for payment of the bequest on the basis that Dr. Karski's earlier gift satisfied the legacy. As a result, YIVO filed a Petition for Order Directing Distribution of Specific Bequest.

The Orphans' Court conducted an evidentiary hearing and rendered an oral opinion finding that Dr. Karski intended for his lifetime gifts to YIVO to satisfy the legacy under the will. Following the entry of final judgment, YIVO appealed to the Court of Special Appeals which affirmed the judgment of the Orphans' Court. We granted YIVO's petition for a writ of certiorari.

### Standard of Review

The standard of review in this action is summarized in Maryland Rule 8–131:

> (c) Action tried without a jury. When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Md. Rule 8–131 (2005).

We recently discussed our review pursuant to Md. Rule 8–131. We said:

> "[T]he appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." The deference shown to the trial court's factual findings under the clearly erroneous standard does not, of course, apply to legal conclusions. When the trial court's [decision] "involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review."

*Nesbit v. Government Employees Insurance Company,* 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (internal citations omitted). If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous. *Solomon v. Solomon,* 383 Md. 176, 202, 857 A.2d 1109, 1123 (2004). Furthermore, an appellate court may affirm a trial court's decision on any ground adequately shown by the record even though the ground was not relied upon by the trial court or the parties. *Offutt v. Montgomery Co. Bd. of Edu.,* 285 Md. 557, 563 n. 3, 404 A.2d 281, 285 n. 3 (1979) (citing *Robeson v. State,* 285 Md. 498, 403 A.2d 1221 (1979)).

## Discussion

At the outset, we find it important to determine the precise meaning of "ademption." Black's Law Dictionary defines "ademption" as "the destruction or extinction of a testamentary gift by reason of a bequeathed asset's ceasing to be a part of the estate at the time of the testator's death." BLACK'S LAW DICTIONARY 42 (8th ed., 2004). We have said that ademption is defined as a "revocation, recalling, or cancellation, of a legacy, according to the apparent intention of the testator, implied by law from acts done by him in his life, though such acts do not amount to an express revocation of it." *Von Steinner v. Sorrell,* 259 Md. 228, 230, 269 A.2d 604, 605 (1970) (citations omitted). The Tennessee Supreme Court discussed the doctrine of ademption and stated that, "ademption is generally defined as 'the extinction, alienation, withdrawal, or satisfaction of the legacy by some act of the testator by which an intention to revoke is indicated: the doing of some act with regard to the subject-matter which interferes with the operation of the will.'" *In re Estate of Hume,* 984 S.W.2d 602, 604 (Tenn.1999) (quoting *American Trust & Banking Co. v. Balfour,* 138 Tenn. 385, 198 S.W. 70, 71 (1917)).

As the definitions above demonstrate, there are two distinct types of ademption. The first occurs when "the unique property that is the subject of the specific bequest has been sold, given away, or destroyed, or is not otherwise in

existence at the time of the testator's death." BLACK'S LAW DICTIONARY 42 (8th ed., 2004). This is referred to as ademption by extinction. Ademption by extinction results because of "the doing of some act with regard to the subject-matter which interferes with the operation of the will." *In re Estate of Hume,* 984 S.W.2d at 604 (citing *American Trust & Banking Co.,* 198 S.W. at 71).[6] By comparison the other type of ademption occurs when the testator, while alive, has already given something of value to the beneficiary in lieu of the legacy. BLACK'S LAW DICTIONARY 42 (8th ed.2004). This is known as ademption by satisfaction. The doctrine of ademption by satisfaction "refers to the situation in which the testator gives in his lifetime to a legatee what he had left him in his will." *In re Estate of Hume,* 984 S.W.2d at 604 (citing *Rhodes v. Kebke,* 179 Tenn. 480, 167 S.W.2d 345, 348 (1943)).

In the case before us there is no claim of ademption by extinction. The question here is whether there was an ademption by satisfaction and whether it has occurred is most certainly a matter of testator intent. Murphy's Will Clauses § C1, 14–54 (Matthew Bender). Under the doctrine of

---

**6.** It is a general rule that ademption by extinction is not a matter of intent and therefore evidence of a testator's purpose in effecting an extinction of a legacy is irrelevant. *Matter of Nakoneczny,* 456 Pa. 320, 323–324, 319 A.2d 893 (1974). In the case of *In re Brann,* 219 N.Y. 263, 114 N.E. 404 (1916), the New York Court of Appeals asserted that, while the law of ademption may once have been dependent upon intention, the courts now look "to the fact of change" and once that is ascertained does not "trouble itself about the reason for the change." *In re Brann,* 114 N.E. at 405. Following this rule, in 1925 this Court held that ademption "is to be sought for in the facts of destruction or loss of the thing specified in the legacy, or loss of its identity, rather than in change of intention on the part of the testator." *Elwyn v. DeGarmendia,* 148 Md. 109, 112, 128 A. 913, 914 (1925). Those cases, however, all involved the theory of ademption by extinction because the specific legacies were extinguished, lost, or destroyed. Accordingly, "[t]he rule [of ademption by extinction] prevails without regard to the intention of the testator or the hardship of the case, and is predicated upon the principle that the subject of the gift is annihilated or its condition so altered that nothing remains to which the terms of the bequest can apply." *In re Estate of Hume,* 984 S.W.2d at 604 (quoting *Wiggins v. Cheatham,* 143 Tenn. 406, 225 S.W. 1040, 1041 (1920) (alterations in original)).

ademption by satisfaction, the intent of the testator is "relevant to determine whether the testator's actions regarding the legatee amounts to a withdrawal of the gift from the operation of the will.' " *In re Estate of Hume,* 984 S.W.2d at 604. The law is established in this State that, "when a testator in his lifetime pays to a legatee the amount of money given by the will, and such payment is intended to be in satisfaction of the legacy, the legacy is thereby adeemed." *Rhein v. Wheltle,* 206 Md. 1, 6, 109 A.2d 923, 925 (1954) (citing *Gallagher v. Martin,* 102 Md. 115, 118, 62 A. 247, 248 (1905)). Thus the question whether a legacy is adeemed by a gift made by a testator to a legatee after execution of the will depends upon the intention of the testator. *Rhein,* 206 Md. at 6, 109 A.2d at 925. Therefore, if a testator intended that an *inter vivos* gift should abrogate the legacy, the legacy is adeemed either in whole or in part; but if a testator intended that the legatee should receive both the testamentary gift and the *inter vivos* benefit, the legacy is not adeemed. *Id.*

 It is a general rule that "where a testator is the parent of the legatee or in *loco parentis,* and after executing his will makes a gift to the same child, it will be presumed that the gift was intended to be in satisfaction of the legacy." *Rhein,* 206 Md. at 6, 109 A.2d at 926. The legacy will be considered adeemed unless the presumption is rebutted. *Id.* This principle was founded upon the equitable presumption that a parent, who has the natural obligation to provide for his children, after executing a will establishing the portion of his estate that each child should receive, would not give one of his children a double portion of his estate to the detriment of the others. *Id.* (citing *Selby v. Fidelity Trust Co.,* 188 Md. 192, 51 A.2d 822 (1947); *Wallace v. Dubois,* 65 Md. 153, 159, 4 A. 402, 403 (1886); *Richardson v. Eveland,* 126 Ill. 37, 18 N.E. 308 (1888); *Carmichael v. Lathrop,* 108 Mich. 473, 66 N.W. 350 (1896)). On the other hand, it is accepted as a general rule that where a testator is not the parent of the legatee or does not stand in *loco parentis,* it will be presumed that the subsequent gift did not adeem the legacy by satisfaction. *Rhein,* 206 Md. at 7, 109 A.2d at 926.

In *Associated Professors of Loyola College v. Dugan,* we said:

[T]hat if the bequest is for a particular purpose, a subsequent gift to the legatee by the testator in his lifetime for the same purpose operates as a satisfaction of the legacy to the amount of the gift. This statement of the rule is subject to the qualification that the gift *inter vivos* must not be substantially different in kind from the legacy.... The rule we have stated is uniformly recognized and applied where the conditions make it appropriate. (Citations omitted.)

*Associated Professors of Loyola College v. Dugan,* 137 Md. 545, 550, 113 A. 81, 83 (1921).

In *Colley v. Britton,* we reaffirmed the law of ademption by satisfaction. We said:

It is also established law in this State that when in his lifetime a testator pays to a legatee the amount of money given by a will, and such payment is intended to be in satisfaction of the legacy, the legacy is thereby adeemed. The question of whether a legacy is adeemed by a gift made by a testator to the legatee after the will was executed *depends upon the intention of the testator.*

*Colley v. Britton,* 210 Md. 237, 246, 123 A.2d 296, 301 (1956) (emphasis in original).

Petitioner argues that a subsequent writing is necessary to show a clear intention of satisfaction. YIVO relies upon revisions to Maryland's law in 1968 concerning advancements and intestate estates which resulted from the Governor's Commission to Review the Testamentary Law of Maryland ("The Henderson Commission"). The Henderson Commission recommended, and the Maryland Code now reflects, that for an *inter vivos* gift to be treated as an advancement, there must be written evidence of such an intent.[7] Petitioner posits

---

7. *See Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland,* Article 93, Decedent's Estates, at 36 (1968) ("The Commission has recommended that written evidence be required of the intent that an *inter vivos* gift be an advancement because most *inter vivos* transfers today are intended to be absolute gifts and are

that there is no reason to "maintain standards for ademption of a legacy by satisfaction that differ from those applicable to advancement of an intestate share." [8]

In our view, principles governing advancement and intestate shares do not help resolve the issues in this case. In the present case, the decedent did not die intestate, he died with a will. The laws of intestate succession concern disposition of property by operation of law under circumstances where the decedent failed to declare his or her intention with regard to the disposition of his or her property at the time of death. The law of ademption by satisfaction, however, is concerned with the intention of the testator at the time the *inter vivos* gift was made. *See Colley,* 210 Md. at 246, 123 A.2d at 301. Second, petitioner's reliance upon the Henderson Commission Report is of no avail because that Commission did not recommend any changes to the common law of ademption by satisfaction. In fact, there is no mention of any discussion in the Report with regard to the general law of ademption.[9] It is

---

carefully integrated into a total estate plan."); Md.Code, (2001), § 3-106 of the Estates & Trusts Article. Subsection (a) of § 3-106 provides:

If a person dies intestate as to part of his net estate, property which he gave in his lifetime to an heir shall be treated as an advancement against the share of the latter of the net estate if declared in writing by the decedent or acknowledged in writing by the heir to be an advancement.

8. An "advancement, strictly speaking, applies only to intestate estates[.]" *Trustees of Baker University v. Trustees of the Endowment Association of Kansas State,* 222 Kan. 245, 564 P.2d 472, 478 (1977) (citations omitted). In *Selby v. Fidelity Trust Co.,* 188 Md. 192, 197, 51 A.2d 822, 824 (1947), we said: "An advancement, in legal contemplation, is simply the giving, by anticipation, the whole or part of what it is supposed the child or party advanced would be entitled to receive on the death of the party making the advancement."

9. There is no indication that the Henderson Commission sought to recommend any change to the common law of ademption. The Commission's report discussed advancements to minors and its recommendation requiring written evidence of a donor's intent to make an *inter vivos* gift limited to situations when the donor dies intestate. See *Second Report of the Governor's Commission to Review and Revise the Testamentary Law of Maryland,* Article 93, Decedent's Estates, at 35–36 (1968).

reasonable to infer from the Commission's recommendations about advancements to lineal descendants and its silence about ademption that it did not see a need to modify the common law of ademption by satisfaction.

Petitioner next draws from language in *Selby v. Fidelity Trust Co.,* 188 Md. 192, 199, 51 A.2d 822, 825 (1947), to suggest that a writing of the testator is required to show that an *inter vivos* gift is intended as a substitution for the legacy provided in the will. This was not our holding in *Selby* and no other reported decision of this Court has interpreted *Selby* for that proposition. *See Colley,* 210 Md. 237, 123 A.2d 296; *Rhein,* 206 Md. 1, 109 A.2d 923.

The issue in *Selby* was whether payments in the form of securities and cash to Fidelity Trust Company by the testator, during his lifetime and after execution of his will, adeemed a bequest in his will to the Trust Company. We held that the *inter vivos* transfers to the trust were ambulatory and revocable during the testator's lifetime and did not constitute an outright irrevocable gift to a third party. *Selby,* 188 Md. at 202, 51 A.2d at 826. Hence, the transfers to the trust did not adeem the testamentary trust established under Mr. Selby's Will. In that case, the evidence was not sufficient to show that the testator's intention was to substitute the transfers in trust for the bequest under his will. Specifically, we said that the question of whether a gift is an advancement may "turn on the provisions of a will, or on a writing of the testator showing he intended the advancement to be in substitution for the legacy provided in the will." *Selby,* 188 Md. at 199, 51 A.2d at 825. We never said, in *Selby,* that a will or writing are the only methods of proving ademption by satisfaction. Furthermore, we pointed to several examples of situations where parol evidence was admissible to show that the testator intended an outright gift as a substitution for the bequest in a will. For example, we said that parol evidence is admissible on the question of "whether a bequest was intended in payment of a debt owed the devisee by the testator . . ." or "to show that an advancement was to be applied to the specific purpose of a

bequest in the will to be used for the building of a church." *Selby*, 188 Md. at 202, 51 A.2d at 826 (citations omitted).

In addition, petitioner contends we should adopt the view of 1 Restatement (Third) of the Law of Property (Wills and Other Donative Transfers) § 5.4 (1999) (hereinafter, "Restatement") and the Uniform Probate Code § 2–609 (amended 1990), 8 U.L.A. 179 (1998) (hereinafter, "UPC"). Section 5.4 of the Restatement Ademption by Satisfaction provides:

> An *inter vivos* gift made by a testator to a devisee or to a member of the devisee's family adeems the devise by satisfaction, in whole or in part, if the testator indicated in a contemporaneous writing, or if the devisee acknowledged in writing, that the gift was so to operate.

Under the Revised UPC, § 2–609 Ademption by Satisfaction, the required evidence of intent can take one of three forms: (I) a statement in the will itself providing for deduction of the gift or any future gifts, (ii) a written statement of the testator in a contemporaneous writing indicating that the gift is in full or partial satisfaction of the devise, or (iii) a written statement of the devisee acknowledging that the gift is in full partial satisfaction of the devise.[10] Maryland, however, has neither expressly adopted the Restatement § 5.4 nor the UPC. Both provisions require a writing to prove that an *inter vivos* gift operates as an ademption by satisfaction. We are not persuaded, however, to adopt either view. We are guided by the long-standing rule that the intention of the testator at the time of the *inter vivos* gift is the heart of ademption by satisfaction. *See Colley*, 210 Md. 237, 123 A.2d 296; *Rhein*, 206 Md. 1, 109 A.2d 923; *Wallace*, 65 Md. 153, 4 A. 402.

---

10. Eleven states have enacted the Revised UPC § 2–609 or some variation of it: Alaska, Arizona, Colorado, Hawaii, Michigan, Minnesota, Montana, New Mexico, North Dakota, South Dakota, and Utah. Twelve states enacted the original UPC ademption by satisfaction section (Original UPC § 2–612) or a close variation of it: Alabama, California, Florida, Idaho, Maine, Missouri, Nebraska, New Jersey, Oregon, South Carolina, Virginia, and Wisconsin. A few other states have enacted nonuniform legislation on ademption by satisfaction, but the majority of states have not developed specific statutes addressing ademption by satisfaction. Maryland is one such state.

The doctrine of ademption by satisfaction is an intent-effecting doctrine. The doctrine operates to prevent the legatee from receiving a double gift against the testator's wishes.[11] The question is one wholly of intention, and the burden is upon those who assert that the *inter vivos* gift was intended to satisfy the legacy. *See Colley*, 210 Md. at 246, 123 A.2d at 301. As noted above, there are, however, certain circumstances where the intent to adeem will be presumed. For example, "in the case of a legacy to one towards whom the testator does not stand in *loco parentis*, the rule is that if the bequests are for a particular purpose, a subsequent gift to the legatee by the testator in his lifetime for the same purpose operates as a satisfaction of the legacy to the amount of the gift." *Loyola College*, 137 Md. at 550, 113 A. at 83. The rule, however, is subject to the qualification that the *inter vivos* gift must not be substantially different in kind from the legacy. *Id.* Additionally, it is well established that "if a testator has given a legacy in order to accomplish a certain purpose, and he subsequently accomplishes that purpose himself, the legacy is presumed to be adeemed." *Rhein*, 206 Md. at 7, 109 A.2d at 926.

In reaching its conclusion that Dr. Karski's lifetime gifts of $100,000 to YIVO were given to adeem the legacy of approximately $100,000, the Orphans' Court first needed to determine the purpose of the legacy in the will. The Court deemed it reasonable in assessing the purpose of the legacy to look to the facts surrounding it, the commitment Dr. Karski made to YIVO, and the Letter Agreement. In this context, the

---

11. Comment (a) of the Restatement suggests that "[i]deally, the testator would effect that intent by making the gift and revoking the devise...." "The doctrine of ademption by satisfaction operates when the testator neglected to revoke or partly revoke the devise." Unlike the Restatement and the UPC, we think the better policy is to not limit proof of the testator's intent only to written documentation. In our view, it is conceivable that a testator could effectuate his or her intent to adeem by satisfaction by making an *inter vivos* gift and neglect to either revoke the devise or to declare his or her intent to revoke in writing. Thus, the testator's intent to adeem could be drawn, not only from what he or she wrote but also from what he or she said or did.

Court found, as a matter of fact, that the purpose of the legacy was to fulfill or otherwise provide security for the commitment that Dr. Karski made to YIVO. Petitioner claims that the Orphans' Court erred in this determination and that the Court of Special Appeals erred in affirming the lower court's findings because no specific purpose was attached to the bequest. We disagree. Despite the fact that no specific purpose is explicitly stated in Dr. Karski's Will, the Orphans' Court was correct in its conclusion because it arrived at its findings after it considered the bequest in the context of Dr. Karski's relationship with YIVO. Dr. Karski had no continuing charitable relationship with YIVO. We cannot say that the Orphans' Court's factual determination—that Dr. Karski's relationship with YIVO was limited to the terms of the Letter Agreement and that the bequest to YIVO was intended to secure the terms of the Letter Agreement in the event that he was unable to fund the endowment during his lifetime—was clearly erroneous. We hold that the Orphans' Court did not abuse its discretion in concluding, as it did, the purpose of the legacy.

Once it was determined that the purpose of the legacy was security, the Orphans' Court could properly find, based upon the evidence in the record, that the lifetime gifts had a purpose identical to that of the legacy. Dr. Karski gave the lifetime gifts to secure his promise in the Letter Agreement to provide a bequest of $100,000 to YIVO. This finding of a same purpose operates as a satisfaction of the legacy, unless the lifetime gift was substantially different in kind. *See Colley,* 210 Md. 237, 244, 123 A.2d 296, 300; *Loyola College,* 137 Md. at 550–51, 113 A. at 83. Dr. Karski bequeathed shares of Northern States Power to YIVO. At the time Dr. Karski drafted his will these shares were worth approximately $100,000. Dr. Karski's lifetime gift to YIVO consisted of shares of New York State Gas & Electric, shares of Ohio Edison, and cash in the amount of $2.31, thus bringing the total value of the gifts to $100,000. While the stock given to YIVO during Dr. Karski's life were shares from a different company than that named in the will, we agree with the Orphans' Court and the intermediate appellate court that

there was no evidence that the stock in the legacy had any particular significance. Dr. Karski's own Letter Agreement referred to "cash and/or marketable securities," evidencing that Dr. Karski treated the shares as equivalent to cash. The Orphans' Court correctly found that Dr. Karski intended that the different company shares and the cash were identical to one another. Thus, the shares were not substantially different in kind. Further, we find that the Orphans' Court neither erred in its conclusion nor abused its discretion.

■ Having established that the *inter vivos* gifts to YIVO were the same in purpose and in kind as the bequest to YIVO in Dr. Karski's Will, the Orphans' Court found a presumption of ademption. Where a presumption of ademption arises "it is one of fact and not of law and may be rebutted by competent evidence." *Trustees of Baker University*, 564 P.2d at 480. Furthermore, "[t]he question is one for the trier of facts." *Id.* The petitioner did not offer any competent evidence to rebut the presumption of ademption and, absent such evidence, the Orphans' Court was correct to find that it was Dr. Karski's intention to adeem the legacy with his lifetime gifts to YIVO. Accordingly, the bequest to YIVO was satisfied and, as such, YIVO is not entitled to an additional gift. It has been stated that, "if a testator has given a legacy in order to accomplish a certain purpose, and if he subsequently accomplishes that purpose himself, the legacy is presumed to be adeemed, whether or not a presumption of ademption would have arisen otherwise." *Loyola College*, 137 Md. at 550, 113 A. at 83. Such is the case here. We therefore hold that the Orphans' Court was not clearly erroneous in its factual findings regarding a presumption of intention to adeem by satisfaction.

## Parol Evidence

■ We next turn to petitioner's last claim of error with respect to the Orphans' Court's ruling on the admission of the testimony of Dr. Hanna–Kaya Ploss, Executive Director of the American Center of Polish Culture and a friend of Dr. Karski's, regarding statements made by Dr. Karski in 1998 and

the years preceding his death. Specifically, Dr. Ploss testified that,

I don't know what was in that will, but Dr. Karski was not a compulsive man who would pound on something over and over, but from time to time he said, "You know, maybe I should change my will just in case the YIVO Institute will come and ask once more for the money when I already have given it to them," and then he always answered his own question, "No. They are much too decent to do such [a] thing. No."

\* \* \*

He was absolutely sure they will not come a second time and ask for the money when I have already given it to them, that is something that sticks in my mind, "I have already given them the money."

■ We find that the court did not err in allowing the testimony. The "intention of a testator as to whether a gift should adeem or satisfy a legacy may be shown by extrinsic or parol evidence, including [a testator's] conduct after the execution of the will." *Trustees of Baker University*, 564 P.2d at 481 (citing 96 C.J.S. Wills § 1178(5)(a) p. 1012). The Kansas court noted in support of this contention that Page on Wills provides:

In most cases testator's intention with reference to ademption does not appear upon the face of the will, and, if it does, it relates to the future, and it is possible that a testator may change it. Accordingly, it is generally held that extrinsic evidence is admissible to show the intention which the testator had when he [or she] made the payment in question. This includes parol evidence of testator's declarations, evidence of the surrounding facts and circumstances from which his [or her] intent may be inferred and evidence of testator's conduct.

*Trustees of Baker University*, 564 P.2d at 481 (citing 6 Page on Wills (Bowe–Parker Revision), Ademption, § 54.27, p. 283).

■ In recognizing this rule, we acknowledge that "ordinarily the burden of proof as to the testator's intention falls

on the party who claims that a payment operates as an ademption of a legacy." *Trustees of Baker University,* 564 P.2d at 481. Actual intention may be proven by competent evidence that a subsequent gift is to satisfy a legacy and such intention should be enforced. *Id.* All relevant evidence is admissible to prove intent, subject to objections of unfair prejudice, confusion, etc. Md. Rule 5–402. Under Md. Rule 5–803(b)(3) a statement of intent, offered to prove the declarant's future action, is admissible as an exception to the hearsay rule. And the attorney-client privilege is not a bar to the admission of testimony by the lawyer-draftsman as to what the client intended in his will. *Benzinger v. Hemler,* 134 Md. 581, 107 A. 355 (1919).

YIVO argues that the evidence should not have been admitted because the statements made by Dr. Karski to Dr. Ploss were made two years after the lifetime gifts were given to YIVO and, thus, were too far removed to be relevant. As the Kansas court recognized in *Trustees of Baker University,* however, the "better reasoned authorities allow evidence of declarations made long after the *inter vivos* payment admissible for the purpose of showing a testator's intention in making a gift even if made subsequent to the gift, the matter of time merely going to the weight to be accorded such evidence rather than its admissibility." *Trustees of Baker University,* 564 P.2d at 481 (citations omitted). Furthermore, YIVO offered no case law to justify its position on this point. The Orphans' Court found that the testimony was relevant and admissible. As extrinsic evidence is admissible for purposes of showing the testator's intent in ademption cases, we affirm the decision to admit Dr. Ploss's testimony.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**